HIRAM McMILLAN vs. GEORGE C. CROFT[1] — Appeal from Lamar County.

Where the legal title to a note appears to be in the plaintiff, he is the proper person to maintain an action upon it, although another may be the equitable owner of the note. [*Post*, 501; 1 Tex. 87; 5 Tex. 171; 6 Tex. 515; 11 Tex. 142; 15 Tex. 44; 19 Tex. 172; 28 Tex. 622.]

A party should not be permitted to propound interrogatories to the adverse party at a term subsequent to the one at which the answer was filed, and within a few days of the time at which the cause would be called for trial, unless it was essential to the justice of the cause, and the delay was satisfactorily accounted for.

---

[1] NOTE.— This case was decided at the December term, 1846, but in consequence of the opinion being mislaid, it was omitted to be reported in the first volume.

Case stated in the opinion.

No appearance for the appellant.

*Allen*, for the appellee, submitted the cause with a sugges-
tion of delay.

Mr. Justice WHEELER delivered the opinion of the court.

[398] The appellee sued the appellant upon a note made
by the latter, payable to the former. There are in the note no
words of negotiability, and there is no indorsement upon it.

At the spring term, 1845, of the district court, the defendant
answered; and at the fall term thereafter, repeated in sub-
stance the same answer; containing a general denial, and spe-
cially denying the interest of the plaintiff in the note sued on;
averring that the plaintiff had availed himself of the bankrupt
law of the United States, " whereby the note aforesaid, if any
such existed, has become the property of a certain assignee in
bankruptcy, whose name is unknown to this defendant, and
whereby the plaintiff has no right to sue."

To this answer he annexed interrogatories calling on the
plaintiff to answer, 1st. Whether he had ever availed himself
of the bankrupt law of the United States. 2d. Whether he
had surrendered the note to any person. 3d. Whether by the
law of the United States he was required to make such surren-
der; and 4th. Whether the note in question belonged to any
person other than the plaintiff.

This special plea and the annexed interrogatories appear to
have been filed but two days before the trial. At the instance
of the plaintiff they were stricken out and the cause proceeded
to trial. The defendant excepted to the ruling of the court in
striking out the plea and interrogatories; and this exception
brings up the only question presented by the record.

In Thompson v. Cartwright, a case in which I did not sit,
decided at the present term, it was held that " the mere naked
fact of the plaintiff not being the real owner of the note would
not be matter of defense." The case of Farr v. Gomez, 9
Wend. 653, is there cited, in which it was said that " if the
holder of a note or bill is discharged under the insolvent act,

no interest or right in the securities passes to his assignees; and the holder may continue an action at law previously com-- menced, for the recovery thereof, in his own name, or bring a new suit without reference to the assignees."

. [399] The legal title to the note, in the case before us, appears to have been in the plaintiff, and we have no doubt that he was the proper person to maintain the action, whoever may have been the beneficiary or equitable owner of the note. It was said by this court in the case referred to, the note itself showed the right of the plaintiff to sue, and the inquiry whether there was an equitable ownership in another was not essential to the rights of the defendant, unless there was some matter of defense subsisting between himself and such equitable owner of which, in the present case, there is no pretense. The judge did not err, therefore, in regarding that part of the answer and the interrogatories stricken out by him as being irrelevant and impertinent, and as constituting no ground of defense to the action.

But we are of opinion that the interrogatories were properly stricken out for another reason. They were not propounded at the term of the court when the defendant first answered, nor until the very eve of the trial, and this delay does not appear to have been in any manner explained or accounted for. We do not intend to be understood as deciding that the judge may not, in his discretion, under such circumstances, permit a party to propound interrogatories to the opposite party, where the latter could be in no way prejudiced by his having so long deferred the exercise of this right; or that it would not be the duty of the court to permit the interrogatories to be propounded, where the delay was satisfactorily accounted for, and the exercise of this right seemed necessary to ascertain the rights of the parties and attain the justice of the case. But this, like every other right secured to the party, ought to be exercised without prejudice to others, and must be asserted within a convenient and reasonable time. And if not so asserted, or the delay be not satisfactorily accounted for, it should be regarded as waived, and the party should not then be permitted to avail himself of his interrogatories, especially where

his doing so [400] would operate a continuance of the cause, or otherwise prejudice the opposite party.

We are of opinion that there is no error in the judgment, and that it be affirmed.

----

JOHN D. MOORE VS. JAMES W. MORSE — Appeal from Matagorda County.

The interest of a legatee in the property bequeathed to him can in general only be asserted through the legal representative of his testator, according to the laws regulating the settlement of the estates of deceased persons. [Ante, 182.]

Case stated in the opinion.

*Denison* and *Webb*, for appellant.

*I. R. Lewis*, for appellee.

Mr. Justice LIPSCOMB delivered the opinion of the court, Mr. Justice WHEELER not sitting.

The petition states that one Amos A. Galpin departed this life in 1841, leaving a certain instrument in writing duly executed, and, as petitioner believes, good and sufficient as a last will and testament, by which said Galpin bequeathed to petitioner three negro slaves, i. e.: Willis, Adeline and her son George, who are now in Matagorda county; Willis in possession of the sheriff of said county, and Adeline and George in the possession of one Obadiah Fatherd. The petition further states, that on or about the 10th day of May, 1841, said Galpin did execute to one James W. Morse, of the county of Matagorda, a certain writing purporting to be a mortgage upon the said negro slaves, to secure the payment [401] of a certain sum of money, i. e., eleven hundred and ninety-two dollars and fifty-eight cents, due to the said James W. Morse; that the said mortgage was recorded in the county of Brazoria, the residence of the said Galpin. The petition states further that the said Morse did procure from the chief justice of Matagorda county an order for the foreclosure of the said mortgage on the said slaves, and that execution was issued by the clerk