## W. C. CAVITT ET AL. v. A. B. JAMES & CO.

1. A surviving partner cannot convey a bill or promissory note of the firm by endorsement.

2. After the death of Brantly, of the firm of Brantly & Nations, appellants drew their draft in favor of the firm. Nations, the survivor, endorsed it in the name of the firm and delivered it to the appellees in payment of a debt of the firm. *Held*, that such endorsement did not convey title to the bill.

3. (On rehearing.) If the use of a firm name as drawees and endorsers of a draft be merely fictitious, then the draft would have the same legal effect as if made payable to bearer.

4. Where interrogatories are propounded to each of several plaintiffs by the defendants, and only one of the plaintiffs answer them, it is error to admit such answers in evidence over objections by the defendants.

ERROR from Gonzales. Tried below before the Hon. Wesley Ogden.

*Miller*, for plaintiffs in error.—The draft was payable to the order of Brantly & Nations; their endorsement was necessary in order to transfer the title to the draft and to enable any other person to demand and receive payment or to protest for non-payment. (Edwards on Bills, 262, 263; Chitty on Bills.)

This draft being payable to the order of Brantly & Nations, no other person could maintain suit on it until it was properly endorsed and transferred by them. (Chitty on Bills, 227, 228, 231.)

The endorsement of the name of Brantly & Nations on this draft having been denied under oath by defendants, plaintiffs were put upon proof of that endorsement before it could be used in evidence. (Paschal's Digest, Arts. 224, 1443.)

Plaintiffs failed entirely to prove that the endorsement of Brantly & Nations on said draft was made by said

firm, or by their authority, but on the contrary the evidence discloses the fact that the firm was dissolved on or about January 1, 1869, some time before said endorsement.

The endorsement and transfer of a draft payable to the order of any one is a new contract (Edwards on Bills, p. 24); and after dissolution one partner cannot bind the firm, or endorse and transfer negotiable paper in the name of the firm. (Edwards on Bills, p. 255 ; Speake v. White, 14 Texas, 369 ; White v. Tudor, 24 Texas, 639 ; 18 Texas, 287 ; 3 Kent, p. 50.) Then it follows that the partnership having been dissolved before the death of Brantly, that neither partner could endorse the firm name so as to transfer the draft to a third person, and hence that the draft was improperly admitted in evidence; and as this went to the foundation of the action, the error is such as ought to reverse the case.

The fourth error assigned is that the court erred in permitting the protest for non-acceptance and non-payment to be read to the jury without proving notice to these defendants of such protests. This we think too clear for argument. (See Carroll v. Upton, 3 Comstock R., 274; Loury v. Scott, 24 Wendell R., 358 ; Hill v. Vanell, 3 Greenleaf R., 232 ; 3 Hill R., 520 ; 3 Denio R., 145.)

Defendants filed interrogatories to the three plaintiffs who sue. One of the plaintiffs, A. B. James, answers ; the other two do not. Plaintiffs were permitted to read the answers of James as evidence for themselves against the objections of defendants.

We believe the law to be that each party to a suit must answer for himself, and that the answers of one cannot be evidence for or against any other party. (Calhoun v. Wright, 23 Texas, 524 ; Gill v. Campbell, 24 Texas, 407.)

*T. M. Harwood,* for defendants in error.

WALKER, J.—This suit was commenced in the District Court by the defendants in error against the plaintiffs in error, and one James Nations, upon a draft, of which the following is a copy:

"Doll. 3074$\frac{66}{100}$.　　　GONZALES TEXAS, Nov. 15, 1859.

"Twelve months after date pay to the order of Brantly & Nations three thousand and seventy-four and $\frac{66}{100}$ dollars, value received, and charge the same to account of your obedient servants,

"W. C. CAVITT,

"J. T. NATIONS,

"J. M. NATIONS.

"*To John Williams & Co., New Orleans, La.*"

This draft purported to be endorsed by Brantly & Nations, and also by James Nations.

It was in proof that the firm of Brantly & Nations was composed of J. R. Brantly and James Nations.

During the pendency of the suit the plaintiffs dismissed as to James Nations, and judgment was rendered against the plaintiffs in error, Wm. C. Cavitt and J. T. Nations.

It is averred by the appellants that the endorsement of the draft by Brantly & Nations and James Nations was made after the death of Brantly and the consequent dissolution of the firm, and this is proven by the testimony of Everett Lewis.

In 24 Texas, p. 639, in White v. Tudor, the court held that after the dissolution of a partnership one of the partners cannot impose new obligations upon the firm, or vary the character of those already existing. Nor can he endorse a note in the firm name, even in payment of a prior partnership debt. A general authority to one partner, upon a dissolution, to settle the business of the firm, does not authorize him to give a note in the firm name for a partnership debt, or to renew one given before the dissolution.

The same doctrine is laid down in Speake v. White, 14 Texas, 369, and in 18 Texas, 287, and 3 Kent's Com., p. 50.

A. B. James & Co., the plaintiffs below, had no other right or title to the draft sued on than that acquired by the endorsement, which was made after the dissolution of the firm of Brantly & Nations.

True it is that the name of James Nations appears upon the endorsement, and he may have made himself individually liable if he had possessed the power thus to transfer the draft. But we think he had no such power, and therefore a suit against him individually, upon the draft, could not be maintained, for he had no power to transfer it by endorsement.

This question is decisive of the case, and it is unnecessary for us to notice the other assignments of error.

The judgment of the District Court is reversed and the cause dismissed.

REHEARING GRANTED.

*James B. Morris* and *T. M. Harwood*, for defendants in error, upon rehearing.—The evidence, we say unhesitatingly, establishes these facts :

1. That Brantly was dead, and James Nations, as surviving partner, was settling up the partnership business when the draft was drawn.

2. That the execution, endorsement and delivery of the draft to Harwood & Lewis, as attorneys for A. B. James & Co., was a simultaneous transaction, and that the drawers executed the same as a written promise to pay a debt for James Nations.

3. That said draft was then and there simultaneously accepted by Harwood & Lewis as full satisfaction for the claim of James & Co. against Brantly & Nations, and that the evidences of said claim were then and there delivered to the surviving partner, Nations, and that said draft was

accepted in full satisfaction of said claim, and the firm of
Brantly & Nations forever released.

Can it be denied that the surviving partner, Nations,
in the settlement of his affairs with the representatives of
Brantly, either privately, in a probate court, or in a court
of equity, would not be permitted, under the facts, to re-
turn the James & Co. claim as settled ; or will it be as-
serted that he could not be forced thus to return it? And
again, could not Brantly's representatives successfully
plead this settlement against the firm of James & Co., in
a suit on their claim? We think they could.    Then,
since this settlement, being untainted by fraud or ille-
gality, estops James & Co. from proceeding against the
firm of Brantly & Nations, will a court of equity refuse
them the right to enforce their claims against those who
assumed in writing to pay them the Brantly & Nations
claims? We think not, and will now give our reasons
for this opinion.

Appellants in their brief cite 3 Kent, margin, 63.    This
authority is in our favor.    It reads, "One partner cannot
endorse bills and notes previously given to the firm, nor
accept a bill previously drawn on it, so as to bind the
firm." (Story on Partnerships, 322.)

This case refers expressly to securities which were *in
esse* at the date of the dissolution of the partnership, and
closes, "In short, none of them can do any act, or make
any disposition of the partnership property or funds, in
any manner inconsistent with the primary duty, now in-
cumbent upon all of them, of winding up the whole con-
cerns of partnership." The case in 4 Johnson, p. 224,
cited and copied from in appellant's brief, decides that a
partner, after a dissolution of partnership, cannot bind
the firm by endorsing a bill which was given to the firm
before its dissolution. This is all it decides. We have
examined the long array of authorities cited in appel-

lants' brief, and we find that every one of them, when they speak of this subject, say that one partner cannot endorse a bill given to the partnership before its dissolution so as to bind the firm.

The reason of this rule is thus given in the case in 4 Johnson: "It would be a peculiar hardship to put a partner, retired from the whole concern, so completely in the power of the other as to charge him by negotiating bills given during the partnership." The case of Speake v. White, 14 Texas, 364, decides on the question of partnership only this one point, that an acknowledgment by one partner after the dissolution of the partnership of an antecedent indebtness is no evidence against his copartners. The case in 18 Texas, 287, simply declares that a surviving partner cannot carry on the partnership business, but it does decide that he has a right to use the partnership assets to settle up the partnership business. The case in 24 Texas announces the legal generalities in a case totally dissimilar from the one at bar, which are announced in the cases cited in appellant's brief, and in the opinion of the court rendered in this cause, and we think we have shown that these cases do not and cannot apply to this cause. In 1st Vol., 5th Ed., of Parsons on Contracts, page 201, it is said, "When a partner dies, the partnership property goes to the survivors for the purpose of settlement, and they have all the power necessary for this purpose, and no more." "After the dissolution of a partnership, one of the partners, who has authority to collect the debts, may transfer to himself a debt due to the firm." (Oxley v. Willis, 1 Cranch. C. Ct., 436.)

We quote these authorities to show the authority of a surviving partner, and to prove that Nations had the right to settle the James claim as he did. The facts show that the draft sued on was not in existence when Brantly

died.    It was never partnership effects.    The insertion of
the firm name of Brantly & Nations in the body of the
draft could not have made it so, because the evidence
shows that the draft was drawn for the express purpose
of settling the James claim, and for the benefit of James
Nations, the surviving partner.    In 3 Kent, p. 72, note *b*,
it is said :    " If such notes are made payable to the order
of the maker, or to the order of a fictitious person, and
be negotiated by the maker, they have the same effect
and validity as if made payable to bearer."    This is the
law in reference to bills.    (See Story on Bills, Sec. 200.)

Now, if this draft had been made payable to a fictitious
person and immediately endorsed in the same name,
would not the drawers be liable ?    Those who inserted
" Brantly & Nations" in the draft could no more create
an obligation for said firm than they could for a fictitious
person.    How, then, can appellants hope to avoid the
payment of this draft ?

It must be, if at all, by taking advantage of their own
wrong and acknowledging that they attempted a fraud on
James & Co.    If any one other than appellees ever had an
interest in the draft, that one was James Nations, and he
endorsed and delivered it.    In view of the law appellants
cannot for a moment insist that the signature of " Brantly
& Nations" on the back of the note could possibly create
a debt against the estate of Brantly.    Appellees never so
considered it—never by act or deed manifested any other
intention than that their claim was settled.

We have discussed this case as the facts present it in
our opinion.    We will now *argumenti gratia* assume
with appellants that the draft sued on was at the time of
its endorsement the partnership effects of Brantly & Na-
tions.    We think that under this state of the case we can
establish, that Brantly being dead, Nations, as surviving
partner, did, by endorsing the firm name and his own on

the draft, and delivering it to Harwood & Lewis for the purpose of extinguishing a partnership debt, vest in James & Co. such a title to the draft as authorized them to recover judgment thereon against appellants.

In Crawshay v. Collins, 15 Vesey, 226, Lord Eldon says of partnerships: "Another mode of determination is, not by the effluxion of time, but by the death of one partner, in which case the law says that the property survives to the others. It survives as to the legal title in many cases, but not as to the beneficial interest."

In the case of Ruffin *ex parte*, 6 Vesey, 126, the same jurist announced the same doctrine. In the case of Jones v. Thorne, 1 Martin R. (N. S.), 465, this doctrine is applied to the endorsement of a surviving partner. The cases of Sanford v. Mickles, 4 Johns., 224; Abel v. Sutton, 3 Esp., 108; and Foltz v. Poune, 2 Dessaussere Eq., 40, decide that after the dissolution of a partnership, all the members being alive, one of them cannot validly endorse a bill or note.

On the authority of the above cases, Judge Story (Promissory Notes, 125), deduces this elementary principle: "But where the partnership is dissolved during the lifetime of the partners, neither partner can afterwards endorse a note payable to the firm in the name of the firm. But where the dissolution is by the death of one partner, there the survivor may endorse a note payable to the firm in his own name. The reason of the distinction is, that in the former case the implied authority for one partner to act for all is gone; whereas, in the latter case, the note or chose in action vests exclusively in the partner by survivorship, although he must account therefor as a part of the assets of the partnership."

This would be enough, in our opinion, to settle the point. But we have our own court agreeing with this

principle. In the case in 18 Texas, 287, this court, in speaking of the rights of a surviving partner, says :

"Ordinarily, he would be entitled to close up the affairs of the firm, and to this end receive the debts due to the partnership, and to apply the partnership assets and effects to the discharge of its debts."

Under appellants' view of the case this is all the surviving partner, Nations, did. We do not wish to be misunderstood. We admit that such an endorsement could not bind the firm. This court has decided in the cases of Thompson v. Cartwright, 1 Texas, 87; McMillan v. Craft, 2 Texas, 399; Andrews v. Hoxie, 5 Texas, 171; Barnett v. Logue, 23 Texas, 282; and Christie v. Gunter, 26 Texas, 700, that the person who appears to be the legal owner of a note or draft can maintain suit on it in his own name, and that the defendant cannot defeat a recovery by proving that another party is the beneficial owner of the claim sued on.

Under the authorities above cited, what we contend for is that the endorsement and delivery of the draft by James Nations vested sufficient title to the draft in James & Co. to authorize them to recover thereon from appellants, who do not allege that the draft had been paid, or that they have any meritorious defense thereto. The draft was a *chose in action*, and the survivor clearly had a right to pay a firm debt with it, and by so doing vest just title to it in James & Co., as the firm had, and no more.

McAdoo, J., *on rehearing.*—On a full rehearing and careful reconsideration of this case, we are satisfied that the former judgment in the case should be set aside and a different judgment rendered. In the former decision we treated the draft sued on as belonging to the assets of the firm of Brantly & Nations, and transferred by endorsement, after the dissolution of the partnership and

death of Brantly, by the surviving partner, James Nations.

The evidence clearly shows that the draft formed no part of the assets of Brantly & Nations; that it was drawn after the dissolution of the partnership and death of Brantly, not to pay a debt due from the drawers to Brantly & Nations, but that it was drawn by Cavitt and J. M. Nations and J. T. Nations, and endorsed by James Nations, for the purpose of paying off, to the plaintiffs in the court below, a debt due them by the late firm of Brantly & Nations; the name of Brantly & Nations being used as payees, rather in the nature of fictitious payees than beneficiaries of the draft.

Upon the execution and delivery of this draft to the agents of James & Co., the evidences of debt from Brantly & Nations to them were surrendered to James Nations, the surviving partner. In short, this was a new contract entered into by the drawers and endorsers of the draft in discharge of obligations pre-existing, for which James Nations was bound.

It appears to have been well understood by all the parties at the time that the endorsement of the name of Brantly & Nations did not bind the firm, now no longer in existence.

Aside from the testimony of Lewis, which is specific on this point and is uncontradicted, why did James Nations, the surviving partner, endorse the draft? If the endorsement by the firm, of which he had been a member, bound the firm, it certainly bound him as a member of it. And besides, this suit does not affect the partnership effects of Brantly & Nations, nor the estate of Brantly; for neither Brantly's administrator, if he has any, nor his heirs are made parties.

Taking into view the facts connected with the history of this transaction, we think the legal status of the in-

strument sued on is equivalent to a promise in writing of James Nations and the drawers to pay a debt for which James Nations was bound, in consideration of an extension of time for the payment of the debt.

It is certain that all the parties to the transaction knew that at the time when the instrument was drawn there was no fund then in the hands of the drawee with which to discharge it. With this knowledge, protest and notice even were unnecessary.

Had this draft been drawn and delivered to Brantly & Nations during the existence of that partnership, and belonged to them, the surviving partner could not by an endorsement of it, in the partnership name or otherwise, have transferred or put it into circulation, in order to bind all the parties. (Story on Partnership, Sec. 322; 3 Kent's Com., 63; White v. Tudor, 24 Texas, 639; Speake v. White, 14 Texas, 369.)

This rule is intended to put it out of the power of a continuing partner in business to charge a retiring partner by negotiating bills given during the partnership.

If the use of the firm name of Brantly & Nations, as previously indicated, as payees and endorsers, was merely ficticious, then the draft would have the same effect and validity as if made payable to bearer. (Story on Bills, Sec. 200.)

It seems to us, that to permit the real obligors in this case to escape liability, under all the circumstances of the transaction, through a mere technical rule, even if appliable in this case, where an honest debt had thereby been canceled and the evidence of it surrendered, would be grossly inequitable and unjust.

There were errors committed in the court below, which must reverse this case. One alone is sufficient.

Interrogatories were filed by the defendants in the court below to each one of the plaintiffs; but only one of

the plaintiffs answered. The answer of that one should not have been permitted to have been read, upon objection by the defendants, in the absence of answers by the others.

The cause is reversed and remanded.

REVERSED AND REMANDED.