GEORGE S. TAFT *vs.* QUINSIGAMOND NATIONAL BANK.

Worcester.    October 5, 1898. — January 6, 1899.

Present: FIELD, C. J., KNOWLTON, MORTON, BARKER, & HAMMOND, JJ.

*Liability of Bank as Purchaser of Check.*

The purchase of negotiable paper by a bank is as clearly within its legitimate powers as is the collection of such paper by the bank as an agent.

In an action on a check drawn on a bank in another State and deposited by the plaintiff, to whom it was payable, in the defendant bank in W. in this Commonwealth on August 2, 1897, and credited to him upon deposit and afterwards charged back by the bank on his pass-book on November 19, 1897, there was no evidence of usage or custom, or that the defendant informed its customers by notices upon its pass-books or deposit slips or otherwise, that it accepted deposits of commercial paper only as an agent for collection, or that such was its general arrangement with the plaintiff, or that he understood that it was the arrangement ordinarily made by the defendant with its depositors.  When the check was deposited, the plaintiff asked the teller when he would hear from it, if not paid by the maker, and was told that it would be three or four days.  From September 8, when the defendant first informed the plaintiff of difficulty in collecting the check, until November 19, there were frequent interviews between the plaintiff and the defendant's officers, none of which were decisive in favor of either party ; and in this interval the plaintiff knew of the defendant's efforts to find the check, which the drawee never admitted receiving, and to induce the maker to pay it or give a duplicate, and the plaintiff's checks were honored by the defendant at times when his account would have been insufficient to meet them if the amount of the lost check had been charged back ; and on October 23 the pass-book was written up without charging back this amount.  In the course of mail the defendant's Boston correspondent should have received on August 21, at the latest, notice from the drawee of the reception of the check. *Held*, that the defendant became the purchaser of the check.

CONTRACT, to recover the amount of a check.  Trial in the Superior Court, without a jury, before *Gaskill*, J., who found

" that at least after knowledge by the defendant, on September 8, 1897, that the check in question had not been paid, the defendant treated the same as its property and became a purchaser for value of the same, and by its conduct after such knowledge in other respects, and in balancing the plaintiff's deposit-book without notice or claim to the plaintiff at or prior to that time, of charging him with the amount thereof, it ratified its action in crediting said amount to him, and the same became and was treated by the defendant as an absolute credit to the plaintiff."

The defendant alleged exceptions. The facts appear in the opinion, and in a note thereto by the reporter.

*F. P. Goulding,* for the defendant.

*G. S. Taft,* (*H. Parker* with him,) for the plaintiff.

BARKER, J. The action is said by the bill of exceptions to be a suit to recover the amount of a check deposited by the plaintiff in the defendant bank, and credited to him upon deposit, and afterwards charged back by the bank. The declaration has two counts, one for refusal to pay the plaintiff's check drawn upon the defendant, and the other upon an account in which the defendant is debited with the amounts of the plaintiff's deposits, and with the protest fees on his dishonored check, and is credited with the amount of his checks paid by the defendant, the balance being the amount for which, with interest, the court below found for the plaintiff. Whether the bank was indebted to the plaintiff and bound to honor his check depended upon the dealings with reference to the check which he deposited on August 2, 1897, and the amount of which was charged back upon the writing up of his pass-book on November 19, 1897.

The defendant contends that the finding that it became at any time a purchaser of the deposited check was unwarranted. But the purchase of negotiable paper by a bank is as clearly within its legitimate powers as is the collection of such paper by the bank as an agent. The deposit of money by a customer to his credit in a drawing account, without more, creates between the bank and the customer the relation " of debtor and creditor, not of agent and principal." *Carr* v. *National Security Bank,* 107 Mass. 45. So when, without more, a bank receives upon deposit a check indorsed without restriction, and gives credit for it to the depositor as cash in a drawing account, the form of the

transaction is consistent with and indicates a sale, in which, as with money so deposited, the check becomes the absolute property of the banker. The matter may be regulated by statute, as in the State of New York, or there may be general usages of business obtaining in the locality which color the transaction. So a bank by general notices printed on its pass-books or deposit slips, or otherwise brought to the knowledge of its depositor, or by agreement with the particular depositor as to his own deposits, or by crediting negotiable paper as paper and not as cash, or by a particular contract in any special instance, may define its position as that of agent or purchaser. Usually the cases in which a bank is held to have been only an agent for collection have as a controlling element evidence of usage, or notice, or particular agreement. In the present case there was no evidence of usage or custom, nor was it shown that the defendant informed its customers by notices upon its pass-books or deposit slips, or otherwise, that it accepted deposits of commercial paper only as an agent for collection. Nor was it shown either that such was its general arrangement with the plaintiff, or that he understood that it was the arrangement ordinarily made by the defendant with its depositors.

The conversation between the plaintiff and the teller at the time when the deposit was made is consistent with the theory that the bank took the check as an absolute purchaser, relying for reimbursement upon the plaintiff's liability as indorser if the check should not be paid, or the theory that the bank took the check as a conditional purchaser with the option of retransferring its ownership to the plaintiff upon ascertaining within a reasonable time that the check was not honored upon presentment to the drawee, as well as with the defendant's theory that it took the check as an agent for collection.* It is not disputed that no information was given by the bank to the plaintiff that

---

* The bill of exceptions recites that "at the time of the deposit of said check, nothing was said by the plaintiff or defendant, except that the plaintiff told the defendant's teller that the check was a collection which he had made for a client, and asked how long it would be before he would hear from the check if it were not paid by the maker; that the teller answered three or four days. At that time the plaintiff was under the impression that the check he deposited was drawn on a bank of Philadelphia, and may have said so to the teller."

there was difficulty in collecting the check until September 8, 1897. From that time until the amount of the check was charged back to the plaintiff in the writing up of his pass-book on November 19, 1897, there were frequent interviews and communications, none of which are decisive in favor of either party, between the plaintiff and the defendant's officers with reference to the check. It seems that, upon the receipt of the check, the defendant sent it to its Boston correspondent, who, having no correspondent near Edgmont, South Dakota, where the bank on which the check was drawn was located, mailed the check in a letter directed to that bank on August 3, and that the drawee has never admitted receiving the letter. Between September 8 and November 19, the plaintiff knew of the defendant's efforts to find the check, and to induce the maker to pay the check or to give a duplicate of it. In this interval the plaintiff's checks were honored by the defendant at times when his account would not have been enough to meet them if the amount of the missing check had been charged back, and on October 23 his pass-book was written up by the bank without charging back this amount. In due course of mail the defendant's Boston correspondent should have received on August 21, at the latest, an answer to its letter enclosing the check to the drawee. It cannot be said that these circumstances show conclusively that the bank took the deposited check as an agent for collection, and the finding that it became a purchaser must stand. This finding makes all questions as to the negligence of the defendant or of its correspondent immaterial. The defendant, having no right to charge back the amount of the deposited check, was a debtor to the plaintiff for money which the latter could recover upon demand, and the refusal to rule that the plaintiff's damages were merely nominal was right. See *Winslow* v. *Everett National Bank*, 171 Mass. 534.

*Exceptions overruled.*