AEBI, Respondent, vs. BANK OF EVANSVILLE, Appellant.

*January 12—January 31, 1905.*

*Bank checks: Indorsement and deposit in another bank: Presentment: Delay: Loss of check: Discharge of indorser: Renewal of liability by new contract.*

1. Where a check upon another bank is indorsed by the payee and deposited in the bank in which he keeps an account, and the latter bank accepts it and credits the amount as cash to the depositor's account, to be checked against as he sees fit, these acts indicate, *prima facie*, the completed transfer of the check, by which the bank accepting it becomes the owner thereof and not a mere agent to collect.

Aebi v. Bank of Evansville, 124 Wis. 73.

2. In such a case the payee of the check is chargeable only as an indorser, and to charge him as such the check must be presented for payment within a reasonable time.

3. The bank receiving the check in such a case mailed it on the same day (Sept. 21) to the drawee bank, located in a city seventeen miles distant. It gave the matter no further attention until about Oct. 1, when it learned that the check had not reached its destination and was lost. It did not notify the payee until Oct. 19, and presentment of a duplicate was not made until Oct. 26, when payment was refused, the drawer having then no funds in the drawee bank, although at several times after Sept. 21, including Oct. 1–3, he had had a balance there exceeding the amount of the check, and up to Oct. 23 was in apparent credit at the bank to an amount more than sufficient to satisfy the demand. *Held*, that prior to Oct. 19 the payee had been discharged from liability as indorser.

4. The payee having been absolutely discharged, any renewal of his liability must be by new contract; and his co-operation with the indorsee bank in obtaining and indorsing a duplicate check, at the request of such indorsee and 'to enable it to obtain the money from the drawee, did not amount to a waiver of the previous omissions of the indorsee or to an agreement to assume a new liability.

5. Only when an indorser was informed of all the material facts resulting in his discharge from liability, will a new promise of liability be implied from acts which otherwise might justify such implication.

APPEAL from a judgment of the circuit court for Rock county: B. F. DUNWIDDIE, Circuit Judge. *Affirmed.*

Plaintiff, a farmer residing about five miles from Evansville, kept account in defendant bank. It was accustomed to receive checks payable to his order upon the faith of his indorsement, and credit them to him as cash, and collect them without charge, and in case of dishonor to charge the checks back to him on his account. On September 14, 1901, plaintiff received a check dated August 31, 1901, from one Speich, a cheese dealer at Brodhead, upon the bank at that city, seventeen miles distant from Evansville, with daily mail between these places. This check, on September 21st, he indorsed and deposited with the bank, and was given credit for it as cash.

The defendant on the same day mailed it to the Brodhead Bank for payment and remittance; heard nothing from it, and gave no further attention to it for about ten days, when a card of inquiry was sent, to which no reply was received. After waiting several days longer, defendant's cashier telephoned to the Brodhead Bank, and learned that no such check had been received; and waited still several days, and telephoned again, receiving the same information. It was proposed that the Brodhead cashier ask Speich for a duplicate. Not until October 19th did defendant notify the plaintiff that the check was not paid. Then the assistant cashier asked him to apply to Speich for a duplicate, which he consented to do when opportunity presented. He accordingly saw Speich on the 21st of October, who wrote out a duplicate check, payable to plaintiff, dated same as former, marked "Duplicate," and with notation, "Original not payable," and mailed it to defendant. On the following day the defendant wrote to plaintiff "to call and sign check when in town." On October 25th he called, and, at the request of the defendant, wrote his name on the back of the duplicate check. The check was then sent to the Brodhead Bank, reaching there October 26th, and was refused, Speich having about that time absconded, leaving a bank balance of about $400, which was absorbed by the Brodhead Bank by charging up a note to him.

During the time from September 21st to October 26th Speich persistently had a balance at the Brodhead Bank, except for a day or two when there was a few dollars over-draft, and seems to have been in good credit in that bank, for they discounted his note on one or more occasions. The balance was usually less than the amount of this check, but frequently only by a few dollars. On several days, however, between September 21st and October 19th, the balance exceeded the amount of the check, to wit, on October 1, 3, 9, 10, 14, and 17. During that interval, to wit, on September 28th and October 25th, the defendant twice balanced up plaintiff's

passbook containing the credit for this check, and showing a balance in his favor made up in part thereof; but on the 28th of October wrote plaintiff that the check was dishonored and Speich had run away, saying, "Please call at bank and attend to same." On November 12th defendant charged up in plaintiff's account and on his passbook the amount of said check. On the following day plaintiff presented a check for the exact balance which would be to his credit without charging up said Speich check, and demanded payment thereof, which the bank refused, offering to pay him the balance after deducting the Speich check.

This action was brought to recover such entire balance. The court found the facts substantially as stated, and, as conclusions of law, that the check upon its deposit became the property of the defendant, and that the failure of the bank to present for payment and notify plaintiff had discharged him as indorser. The court seems to have refused to pass on the effect, by way of waiver, of plaintiff's indorsing the duplicate check on October 25th, for the reason that no waiver was pleaded. Judgment was entered for plaintiff for the amount demanded, from which the defendant brings this appeal.

For the appellant there was a brief by *Richmond & Richmond* and *F. J. Lamb,* and oral argument by *T. C. Richmond.*

For the respondent there was a brief by *J. L. Sherron* and *Thomas Luchsinger,* and oral argument by *Mr. Sherron.*

DODGE, J. We have no doubt of the correctness of the court's finding of fact that by the general indorsement of the check in question, its acceptance by the bank, and the credit of the amount as cash to the plaintiff in his general account to be checked against as he saw fit, with nothing to qualify the effect of such acts, the bank became the owner of the check, as distinguished from a mere agent to collect the same on behalf of the plaintiff. All of the acts above recited *prima*

*facie* indicate the discount and completed transfer of the check. 2 Morse, Banks & B. § 573; *Shawmut Nat. Bank v. Manson,* 168 Mass. 425, 47 N. E. 196; *Taft v. Quinsigamond Nat. Bank,* 172 Mass. 363, 52 N. E. 387; *Burton v. U. S.* 25 Sup. Ct. 243. Only by clear evidence could a contrary significance be accorded them. There is no such evidence sufficient to constitute a clear preponderance such as would be necessary to warrant us in disagreeing with this finding.

Such being the transaction, the right of the defendant to charge back the amount of this check or to collect from the plaintiff is only that resulting from the relation of indorsee and indorser. The rules governing that relation are familiar, and largely now codified in our Negotiable Instrument Law, ch. 356, Laws of 1899. In order to charge indorser upon a check or inland bill of exchange payable on demand, presentment must be made by the holder within a reasonable time after it comes to his possession. Sec. 1684—2. Such reasonable time is not fixed by statute, but by consensus of authority, in absence of special circumstances of excuse, is limited to the next business day, or, if the bank upon which the check is drawn is at another place, the check must be forwarded to the place of payment on the next business day, and presented at latest upon the day following its receipt at the place of payment. *Gifford v. Hardell,* 88 Wis. 538, 60 N. W. 1064; *Lloyd v. Osborne,* 92 Wis. 93, 65 N. W. 859; *Grange v. Reigh,* 93 Wis. 552, 67 N. W. 1130. The check in question never was presented for payment until October 25th or 26th, and clearly, by such delay, the indorser was discharged unless such delay was excused. The only excuse suggested is the loss of the check. If it be conceded that the defendant was guilty of no negligence in adopting the United States mails as a method of transmission, nor in sending the check direct to the bank upon which it was drawn, thus taking chances of acquiring prompt knowledge whether it was honored or dishonored when it reached the payee, nevertheless

it is excused from making presentment and demand only so
long as, consistently with reasonable diligence, it was pre-
vented by the loss of the check. Sec. 1678—11, Negotiable
Instrument Law. It would seem extremely doubtful whether
defendant could claim, in the exercise of due care, to have
been so prevented even during the ten days which it waited
after mailing the check before making any inquiry about it
and before learning of its loss. By ordinary course of mail
the check should have reached the Brodhead Bank as early
as the 23d, and, unless there was some difficulty, plaintiff
should have been notified of its payment or refusal at least
as early as the 24th of September. We shall not deem it nec-
essary to decide whether it was not the duty of the defend-
ant to make inquiry immediately upon failure to receive
such notification in such ordinary course of mail. Even if
that were not so, it did receive notice of the failure of the
check to reach its destination some time about the 1st of Oc-
tober. Upon learning that its attempted presentment by mail
had failed, and that the check was lost, at least for the pur-
poses of immediate presentment, defendant had the oppor-
tunity and owed the duty to at once make substituted pre-
sentment and demand by means of a copy or sufficient de-
scription of the check, and in case of nonpayment to give no-
tice to the indorser. 1 Parsons, Notes & Bills, 368, 448,
530; 2 id. 260, 261; 2 Edwards, Bills, §§ 672, 697; *Smith
v. Rockwell,* 2 Hill, 482; *Hinsdale v. Miles,* 5 Conn. 331;
Negotiable Instrument Law, *supra,* sec. 1681—17. Surely
reasonable diligence would have enabled presentation long be-
fore October 19th. While the effect of the failure to present
for payment and to give notice of dishonor within a reason-
able time absolutely discharges the indorser without proof of
damage or injury to him, it may be pointed out that in this
case damage is quite obvious. The defendant having affirma-
tively learned of the loss of the check somewhere about Oc-
tober 1st, it appears that on the 1st, the morning of the 2d,

and on the 3d of October Speich had a bank balance more than sufficient to meet this check; hence a prompt present- ment at any one of those times would in all probability have secured its payment. But, if that were not so, Speich was in active business, and in apparent credit to an amount more than sufficient to satisfy such demand up to about October 23d, and, had plaintiff been promptly notified on or about October 1st of either the loss or the dishonor of the check, he would have had opportunity to make demand, and prob- ably to secure payment from the maker. See *Shipsey v. Bowery Nat. Bank,* 59 N. Y. 485.

From the foregoing no conclusion is possible save that long prior to October 19th, when defendant informed him of the loss of the check, plaintiff had been discharged from liability thereon as indorser. But it is urged that, by co-operating at the request of the defendant in obtaining a duplicate in order that the same might be used in lieu of the original, he waived the previous omissions on the part of the defendant, and re- newed his liability. Having been entirely discharged, any renewal of his liability must be by new contract. *Tebbetts v. Dowd,* 23 Wend. 379; *Knapp v. Runals,* 37 Wis. 135. The question therefore arises whether the transaction de- tailed in the evidence, about which there is no substantial dispute, amounted to a contract on the part of the plaintiff to assume a new liability as indorser on Speich's new check. Doubtless, when a check has been lost or destroyed, so that the payee or his assigns has not received the money thereby ordered paid, the drawer may give a new and independent check, treating the old transaction as canceled, and in that case the rights and liabilities of all parties may be as if the new check were given upon any other consideration. Equally, however, the parties may proceed on the purpose of merely supplying written evidence of the former transaction, to take the place of that lost, simply to facilitate proceedings or per- fect records. In that case no new contract is made. All

rights grow out of the original transaction or contract, and are exactly the same as if such transaction were proved orally instead of by the new or duplicate written evidence which the parties have supplied. In the latter case the equitable assignment worked by a check under Wisconsin decisions prior to the new statute would be complete from the original date—just as in the case of a lost deed the making of a duplicate would not change the time of transfer of title nor make any new covenants of warranty. Hence the giving of a new check after loss or destruction of a former one is of itself alone ambiguous, and may evince intent to enter into new relations, or merely supply evidence of those already existing, according to the surrounding circumstances. The dating back of the new check to correspond with the lost one and marking it "Duplicate" tend to indicate the latter purpose, for they are wholly immaterial to the mere purpose of enabling the holder to obtain the money which he failed to get on the first check, and, being unusual, are significant. In *Benton v. Martin,* 31 N. Y. 382, it was held that the extrinsic facts accompanying the giving of a duplicate draft indicated an intent to assume new liabilities. Later, in the same case, other extrinsic facts were shown and held to establish the contrary intent, and the drawer was held discharged by omission to seasonably present the original. 40 N. Y. 345; 52 N. Y. 570. In these later decisions it is strongly suggested that the word "Duplicate" upon the second instrument tended to refute any purpose to make a new contract, and some other evidence of such purpose would be necessary. In *Moody v. Mack,* 43 Mo. 210, the obtaining and inclosing a duplicate was held ineffective to excuse failure to notify an indorser.

In the case at bar there is certainly nothing, except the obtaining and indorsing of the new check, to prove an intent on part of either plaintiff or defendant that the latter should assume any additional responsibility. All the evidence indicates that the duplicate was deemed to be needed by the

bank, rather than by plaintiff, for the first attempt to obtain it was through its correspondent at Brodhead; and when it did request plaintiff to communicate with Speich it apparently conveyed the impression that it was asking of him a favor in its own behalf. He did not understand that he was interested, or that his credit for the amount was subject to be lost, upon any contingency. Speich also evidently had the same idea, for he mailed the duplicate direct to the bank instead of giving it to the plaintiff, as would have been natural had either of them supposed his interest was to be affected or convenienced by the transaction. Of course, plaintiff's indorsement was just as essential to make the paper a duplicate of that which had been lost as to give formal rights upon the new instrument, if such it were. No entry was made on the bank books to indicate any change in plaintiff's liability. We cannot escape the conviction that the new paper was intended by all parties to be what it was so industriously marked, namely, a facsimile and duplicate of the former, identical in essence, operation, and legal effect (*State ex rel. Fenelon v. Graffam,* 74 Wis. 643, 647, 43 N. W. 727); that when the bank obtained it all parties were placed in exactly the same situation in fact and in law as if the original had that day come back to it through return of the lost letter, and therefore that no new promise or waiver of past neglect was made.

Another consideration which obstructs any implication of waiver or new promise by plaintiff is absence of knowledge on his part of the facts upon which his discharge from liability rested. No information was given him as to when the loss of the check was discovered, or whether a due presentment had been made or payment refused. Only when an indorser is informed of all the material facts is a new promise of liability to be implied from acts which otherwise might justify it. *Low v. Howard,* 10 Cush. 159; *Hamilton v. Winona S. & L. Co.* 95 Mich. 436, 54 N. W. 903.

From the foregoing discussion must result the conclusion that plaintiff was fully discharged from any liability to defendant upon the check in question, and was entitled to recover his deposit balance without deduction of the amount of that instrument.

*By the Court.*—Judgment affirmed.