This is an action brought by the plaintiff upon two checks. At the conclusion of the trial both parties moved for a directed verdict, whereupon the cause was decided by the trial court in favor of the plaintiff and judgment entered. The appeal is from the judgment. The facts necessary to be stated are as follows: On July 21, 1923, the deputy county treasurer of Wells county drew a check for $500 on the First National Bank of Harvey, payable to the order of the Farmers State Bank of Fessenden. This check was deposited in the payee bank by the drawer and placed to the county's credit, but the amount was not entered in the pass-book. The pass-books of the payee bank contained the following statement: "This bank in receiving out of town checks and other collections acts only as your agent and does not assume any responsibility beyond due diligence on its part, the same as on its own paper." (The credit entries here involved, however, were not made in the pass-book, but in our view of the case this fact is not important.) The check was specially indorsed by the *Page 504 
payee to the First National Bank of Minneapolis, its correspondent, and by the latter to the Federal Reserve Bank of Minneapolis, and by the Federal Reserve Bank to the order of any bank, banker or trust company. Another check, dated the same day and identical in amount and form, was drawn upon the Farmers State Bank of Cathay. It was likewise delivered to the payee and similarly credited and indorsed. The payee bank failed before the checks were paid by the banks upon which they were drawn. The county stopped payment on the checks and they were protested. When the checks came back to the First National Bank of Minneapolis, the first indorsee, it knew of the failure of the payee bank and it did not return them to the Fessenden bank. At that time the account of the Fessenden bank in the plaintiff bank was overdrawn, so there was no credit against which the protested checks could be charged. The plaintiff bank, between the original receipt of the checks and their return to it, had paid drafts and other items on account of the Farmers bank in larger amount than the credit of that bank, including as a credit the face of the checks in question. It may be assumed, for the purposes of this decision, that there was a custom between the Fessenden bank and the plaintiff bank, its correspondent, whereby any items that were forwarded by the Fessenden bank for collection and credit were subject to being charged back in case of noncollection and that any credit given by the plaintiff bank in advance of collection was a conditional credit merely. Both the plaintiff and the defendant filed claims with the receiver of the payee bank, which embraced the amount of these checks. The trial court held that the plaintiff was the owner and holder of the checks in question and entitled to recover from the drawer.
The principal contention upon this appeal is that the plaintiff is not a holder with the right to enforce the instruments against the drawer but an agent of the payee bank, which was a mere collecting agent for the drawer.
It will be noted that the indorsements are unrestricted. There are no words employed which would have the effect of prohibiting further negotiation or which would constitute the indorsee an agent merely, or which would vest the title in trust. Neg. Inst. Law, § 36, Comp. Laws 1913, § 6921. Hence, the contentions of the appellant are necessarily predicated upon a custom or an understanding, in no way expressed *Page 505 
on the instruments in question, that the Fessenden bank is to act only as an agent for the drawer, and in turn that the Minneapolis bank, in taking paper from the Fessenden bank for conditional credit, is to act merely as the agent for the latter, acquiring none of the rights of a holder on its own account. We need not determine in this case the rights of the Fessenden bank or of its receiver against the drawer of the checks, as we are concerned only with the rights of a third party, the Minneapolis bank, against the drawer.
The trial court has found that, on the day the checks in question were received by the Minneapolis bank, it honored and paid checks and drafts drawn upon it by the Fessenden bank in such an amount as to reduce the credit balance (including the two checks as credit items) to the sum of $32.54; that in paying such checks and drafts the plaintiff relied, in part at least, upon the credit that day entered upon its books representing the two $500 checks; that two days thereafter the plaintiff bank honored other checks and drafts to an amount in excess of the remaining credit balance, resulting in an overdraft which continued until the closing of the Fessenden bank; that all these transactions were without any notice or knowledge of any defense to the checks and in the belief that the same were good and in reliance thereon. There is no evidence in the record that would warrant this court in overturning any of these findings of fact. Hence, the question is reduced to one of law, namely: Whether or not the transfer of paper unrestrictedly indorsed, the crediting of the face amount by the transferee in favor of the transferor, and the subsequent honoring of drafts against such credit, may constitute the transferee a holder in due course, holding free from any defense that might have been available as between the drawer and the payee; or is the transferee, if otherwise a holder in due course, deprived of that position and rendered subject to defenses on account of a custom or agreement whereby the transferee is entitled to charge back to the transferor the amount of items thus credited in the event of dishonor?
Since this cause was presented in this court, a similar question has been decided by the Supreme Court of the United States in the case of Douglas v. Federal Reserve Bank,271 U.S. 489, 70 L. ed. 1051, 46 Sup. Ct. Rep. 554, decided June 1, 1926, as will appear from the following paragraph in the opinion: *Page 506 
"While there is not entire uniformity of opinion, the weight of authority supports the view that upon the deposit of paper unrestrictedly indorsed, and credit of the amount to the depositor's account, the bank becomes the owner of the paper, notwithstanding a custom or agreement to charge the paper back to the depositor in the event of dishonor. Burton v. United States,196 U.S. 283, 49 L. ed. 482, 25 Sup. Ct. Rep. 243; Brusegaard v. Ueland, 72 Minn. 283, 75 N.W. 228; National Bank v. Bossemeyer,101 Neb. 96, 102, L.R.A. 1917E, 374, 162 N.W. 503; Walker v. D.W. Ranlett Co. 89 Vt. 71, 93 A. 1054; Aebi v. Bank of Evansville,124 Wis. 73, 68 L.R.A. 964, 109 Am. St. Rep. 925, 102 N.W. 329. See Scott v. W.H. McIntyre Co. 93 Kan. 508, L.R.A. 1915D, 139, 144 P. 1002; Vickers v. Machinery Warehouse Sales Co.111 Wn. 576, 191 P. 869. But see W.J. Barton Seed, Feed 
Implement Co. v. Mercantile Nat. Bank, 128 Tenn. 320, 160 S.W. 848; Armour Packing Co. v. Davis, 118 N.C. 548, 24 S.E. 365."
The Nebraska case cited in the above quotation involved facts that are scarcely distinguishable in any respect from the facts in the instant case. There the defendant drew a draft payable to the A bank, deposited it therein and received credit, the pass-book containing a stipulation identical with that found in the pass-books of the Fessenden bank. The A bank indorsed the draft without restriction to its correspondent which in turn credited the A bank and sent the draft through its correspondent for collection from the drawee. Before the draft reached the drawee bank, the A bank suspended and the defendant notified the drawee not to pay. The draft was protested and returned to the plaintiff, the correspondent of the A bank, which then, as a holder for value, sued the drawer. A careful examination of the opinion leaves us in some doubt as to whether or not the defendant checked against the credit so obtained in the A bank and whether the A bank drew on the credit thus obtained in the plaintiff bank (but note quotation below), but in the case at bar, under the evidence and the findings of fact, there can be no doubt that the Fessenden bank utilized the credit thus obtained in the plaintiff bank. In all other respects it will be seen that the facts are parallel. The Nebraska court, in discussing the rights of the plaintiff as a holder, said (101 Neb. 96, 102, L.R.A. 1917E, 377, 162 N.W. 505): *Page 507 
"Does the fact that, if protested, the Lincoln bank (correspondent bank and plaintiff) was entitled to charge back the amount of the draft and protest fees constitute it merely an agent for collection and not a holder in due course? While there is some conflict in the authorities, the better view is that the deposit of a check or draft in a bank with a general indorsement and the giving of credit for its amount by the bank to the depositor, in the absence of other evidence as to the intention of the parties, passes the title to the bank, and makes it a holder for value, entitled to recourse on prior indorsers upon the protest of the paper. In other words, when such a state of facts is proved there is a prima facie case made that the title has passed, and the fact that it, the receiving bank, may charge back a protested draft does not affect the relation."
Commenting further on the effect of the stipulation in the passbook, providing that in receiving out of town checks the bank acts only as agent, the court said that it could not affect the right of the plaintiff, saying further "the fact that the drawers put the paper in circulation, and that the Superior bank (the A bank) was thus able to negotiate it as its owner and holder, received full credit for it, the plaintiff bank having no knowledge of any infirmity, makes it a holder for value as defined in § 5344, Rev. Stat. 1913." The court distinguished the case before it from the Minnesota case, which is relied upon by the appellants here, in Re State Bank, 56 Minn. 119, 45 Am. St. Rep. 454, 57 N.W. 336, saying that in that case the controversy was between the original parties, and not between a holder for value without notice and the drawer. As to the effect upon the plaintiff of any custom between the depositor and the A bank, it was said:
"Even though by the custom between the drawer and the Superior bank, the drafts were taken only for collection, there is absolutely no proof in the record that the plaintiff had any knowledge whatever of this state of affairs. It received the draft with the general indorsement and credited the Superior bank with the amount in its deposit account which was drawn upon from day to day."
We are of the opinion that the better view is that expressed above to the effect that an unrestricted indorsee may be a holder in due course, notwithstanding the existence of an arrangement whereby a credit entered in favor of the indorser is conditional. We, however, *Page 508 
express no opinion as to whether or not the conditional credit alone would constitute value; for, under the facts in this record, the credit was utilized before the event which entitled the indorsee to erase it had been determined. The payment of drafts and checks of the indorsee on the strength of the credit obtained through the checks in question, clearly, in our opinion, constitutes the giving of value sufficient to make the indorsee a holder for value within the Negotiable Instruments Act.
Section 191, Neg. Inst. Law (Comp. Laws 1913, § 7075), defines a holder as the payee or indorsee of a bill or note who is in possession of it, or the bearer. There is no doubt that the plaintiff is an indorsee in possession and, consequently, a holder within the Act. There are no prior restricted indorsements which would qualify the plaintiff's ownership or serve notice of the rights of a third party such as the defendant claims here. The same section defines value as meaning valuable consideration, and § 25, Neg. Inst. Law (Comp. Laws 1913, § 6910), defines value as any consideration sufficient to support a simple contract. Section 27, Neg. Inst. Law (Comp. Laws 1913, § 6912), further provides that where the holder has a lien on the instrument, arising either from contract or by implication of law, he is deemed a holder for value to the extent of his lien. Under § 52, Neg. Inst. Law (Comp. Laws 1913, § 6937), a holder becomes a holder in due course where he takes the instrument under the following conditions: That it is complete and regular on its face; that he became the holder before it was overdue and without notice that it had been previously dishonored; that he took it in good faith and for value; and that he had no notice of any infirmity in the instrument or any defect in the title. These elements are present in the instant case.
Another authority in point in support of our conclusion is Old Nat. Bank v. Gibson, 105 Wn. 578, 179 P. 117, 6 A.L.R. 247, in which a prior Washington case holding to the contrary (American Sav. Bank T. Co. v. Dennis, 90 Wn. 547, 156 P. 559) was overruled. For additional authorities, see the note appended to the Washington case in the A.L.R.
The judgment appealed from is affirmed.
CHRISTIANSON, Ch. J., and NUESSLE, BURKE, and JOHNSON, JJ., concur. *Page 509