CEDAR RAPIDS NATIONAL BANK, a Corporation, Appellant, v. A. H. SNOOZY and Ed Snoozy, Respondents.

(215 N. W. 96.)

**Bills and notes — maturity of notes — purchaser of note after maturity.**
1. Where promissory notes are executed in series, and the first of the series

Annotation.—(2) As to whether crediting the proceeds of negotiable paper to holder's deposit account as constituting bank a holder in due course, see annotation in 6 A.L.R. 252; 24 A.L.R. 901; 3 R. C. L. 1055, 1056; 1 R. C. L. Supp. 963, 964; 5 R. C. L. Supp. 216; 6 R C. L. Supp. 218.

contains a provision to the effect that "upon failure to meet the payment of this note in full upon the date of its maturity all of the remaining unpaid notes of this series, bearing date herewith, shall become due and payable at once," the failure to pay the first note on maturity renders all of the subsequent notes due and payable and the purchaser of the same thereafter is a purchaser of past due and dishonored paper.

**Bills and notes — credit on checking account — holder in due course.**

2. Where a bank purchases a note before maturity, in due course of business, and as payment therefor gives payee credit on his checking account for the amount of the note, but the same is not checked out or otherwise paid to the payee until after the bank receives notice of defense to the note, such bank is not a holder in due course to a greater extent than the amount that has been paid out.

**Bills and notes — banks and banking — failure of consideration.**

3. Under the foregoing state of facts, where the purchaser brings action upon the note and the maker substantiates his defense, the burden of proof is upon the purchaser to show how much was actually checked out by the payee before he can recover upon the note.

Opinion filed August 18, 1927.

Bills and Notes, 8 C. J. § 606 p. 410 n. 14; § 610 p. 416 n. 72; § 700 p. 482 n. 84; p. 483 n. 87; § 1291 p. 984 n. 57 New.

Appeal from the District Court of Grant County, *Pugh,* J.

Reversed in part and affirmed in part.

*Hyland & Foster,* for appellant.

The rule is that, in order to abrogate the effect of a written instrument, the showing of fraud by him who desires to be released must be established by evidence sufficient to satisfy the judgment and conscience of the jury thereof. First Nat. Bank v. Person, 111 N. W. 730.

One who deliberately signs a written contract without reading the same is concluded thereby as against the other party to such contract. Rousck v. National Union F. Ins. Co. (N. D.) 159 N. W. 300, citing Guild v. More, 32 N. D. 432, 155 N. W. 44.

A collateral agreement that a note shall not be paid if an executory contract forming the consideration thereof is not performed does not affect the right of an indorsee with notice of the agreement so as to deprive him of the character of a holder in due course, unless a breach

of the agreement has occurred and he knows of such breach at the time of his purchase. First Nat. Bank v. Wallace, 196 N. W. 303.

Where there is a specific disavowal of present intention to warrant, the vendee cannot extend a mere willingness to tender a warranty, when called for, into present obligation. League Cycle Co. v. Abrahams, 58 N. Y. Supp. 306.

When a paper is indorsed without restriction by a depositor and is the one passed to his credit by the bank to which he delivers it, he becomes a creditor; the bank becomes owner of the paper and in making the collection is not the agent for the depositor. Douglas v. Federal Reserve Bank (U. S.) 70 L. ed. 1051.

It has been held that if the account is drawn up to the extent that, at the time the bank acquires notice of alleged infirmities, there is not in the account an amount equal to the credit obtained from the proceeds of the instrument, even though the account as it stood after deposit of the proceeds is not entirely exhausted, the bank is a holder in due course. Bland v. Fidelity Trust Co. 71 Fla. 499, 71 So. 630.

It must be shown that the indorsee had actual knowledge of the infirmity or defect or knowledge of such facts as to amount to bad faith. Johanna v. Lennon, 32 N. D. 71, 155 N. W. 685; American Nat. Bank v. Lundy, 21 N. D. 167.

The giving of credit on the deposit account, while not in itself proof of value, still where a substantial part of it is withdrawn from the bank before notice, it becomes value. Fox v. Bank of Kansas City, 30 Kan. 441, 1 Pac. 789; First Nat. Bank v. McNairy, 122 Minn. 215, 142 N. W. 139; Farmers Bank v. Quasebarth, 104 Kan. 422, 179 Pac. 300; Bland v. Fidelity Trust Co. 71 Fla. 499, 71 So. 630; Security Bank v. Petruschke, 101 Minn. 478, 112 N. W. 1000.

*C. F. Kelsch* and *Jacobsen & Murray,* for respondents.

The misrepresentation of the material, workmanship, and performance of machinery by the manufacturer thereof, with knowledge of his falsity, when relied upon by the purchaser and who is deceived thereby, constitutes fraud. Knowlton v. Schultz, 6 N. D. 417; Tamlyn v. Peterson, 15 N. D. 488.

The issue as to whether or not the representations were false and known to be false by the agent at the time of the making thereof was a

question of fact for the jury to determine from the facts and circumstances in evidence.    26 C. J. 1108, 1109.

Transfer of a note for the purpose of preventing a defense for breach of warranty constitutes fraud in its negotiation within the provisions of the statute.    Bills and Notes, 8 C. J. 1291; Bushnell Bank v. Buck, 161 Iowa, 363, 142 N. W. 1004.

If there is sufficient competent evidence in the record to present a question of fact for the jury that there was either fraud in the origin or fraud in the transfer of said instruments, then the burden of proof shifts upon the plaintiff to establish the fact that it was a holder in due course as defined by statute.    Comp. Laws 1913, § 6944; Merchants Nat. Bank v. Reiland, 51 N. D. 287, 199 N. W. 945; First Nat. Bank v. Bratsberg, 52 N. D. 876, 204 N. W. 665.

BURR, J.    This is an action to recover on two promissory notes for $342.50 each, dated September 30, 1923, and due December 1, 1923, and December 1, 1924, respectively.    The notes are known as exhibit A and exhibit B and are numbered 283 and 284.    Exhibit A says: "This note is the first of a series of notes given for a sum of money, and upon failure to meet the payment of this note in full upon the date of its maturity all remaining unpaid notes of this series, bearing date herewith, shall become due and payable at once."    Exhibit B contains a similar provision except it says:    "This note is the second of a series of notes, etc."    These notes were made to the Hall Manufacturing Company of Cedar Rapids, Iowa, and according to the complaint were endorsed to the plaintiff without recourse, in the due course of business, before maturity and for value.    No part of the notes was paid and the plaintiff demands judgment against both defendants.

The defendants answer, admitting the execution and delivery of the notes and nonpayment of any portion thereof.    Defendants claim the notes were delivered as evidence of the purchase of a No. 6 Jenney silo-filler-husker-shredder and that the said machine was warranted to them to do a certain amount of work per day in a certain manner, without waste, to do good and satisfactory work, and that it had no defective material, etc.; that these statements were untrue and known by the representatives of the Hall Manufacturing Company to be untrue, and were made for the purpose of inducing the defendants to buy the ma-

chine; that the defendants in good faith believed and relied upon these statements; that the machine was defective and absolutely worthless; that the notes were obtained fraudulently; that there was a failure of consideration. Defendants also allege that the plaintiff purchased the notes in bad faith with actual knowledge and notice of these facts and that there was a breach of warranty; that it bought the notes for the purpose of preventing the defendants from setting up defenses; and that the defendants had rescinded the contract and offered to return the property.

The case was submitted to a jury, who found for the defendants, and plaintiff appeals.

There are 34 specifications of error with reference to the admission of evidence, and five specifications of error with reference to the instructions to the jury. The appellant also specifies as errors the failure of the court to direct a verdict for plaintiff at the close of the case, and the denying of plaintiff's motion for judgment notwithstanding the verdict or for a new trial. The plaintiff further specifies that the evidence is not sufficient to justify the verdict.

With reference to the alleged errors in the introduction of testimony we find that they are without merit. Some are based on the claim that the time specified was "too indefinite;" some on the theory that the plaintiff was not in duty bound "to withhold any of the moneys of the Hall Manufacturing Company on deposit in the plaintiff bank;" some on the theory that there was no proof of notice of defective title. We have examined these objections and find that all are involved in the issues of law presented, and the determination of these issues will determine the objections.

There was ample evidence as to the character of the machine, the warranties made and the inducements held forth. Plaintiff offered nothing in opposition. The weight to be given to this testimony was for the jury and the jury found in favor of the version given by the defendants. The motions for directed verdict, and for judgment notwithstanding the verdict are dependent upon the facts and need no elaboration here.

There are but two main questions to be determined and these deal with the purchase of the first note exhibit A, and the instructions given by the court. There can be no issue on the purchase of exhibit B.

Plaintiff's own testimony shows that exhibit A was purchased on October 10, 1923 and was due December 1, 1923. In a letter to defendants, dated April 8, 1924, it demanded attention to this note. On July 24, 1924 it purchased exhibit B. Clearly plaintiff knew that the default in payment of exhibit A matured exhibit B; and therefore it bought exhibit B after it was past due. When there is an express provision in one of a series of notes to the effect that the failure to pay that note will make the others in the series due, then such provision accelerates the maturity, and a purchase of them is a purchase of past due paper. It is not a mere option. In Stoy v. Bledsoe, 31 Ind. App. 643, 68 N. E. 907, the court says: "A purchaser of notes, one of which is past due and wholly unpaid . . . which stipulates that the failure to pay any of the notes at maturity shall make all of the notes due and collectable, is merely a purchaser of past due and dishonored negotiable paper." 1 Joyce, Defenses to Com. Paper, 2d ed. 859, 704, 860; 2 Joyce, Defenses to Com. Paper, 2d ed. page 1004. In Rowe v. Scott, 28 S. D. 145, 132 N. W. 695, the court says that the purchaser of two notes containing a clause among other things that if default should be made in payment of the note or any part thereof when due, "the whole amount secured by the mortgage should become due and payable acquires none of them before maturity, but is affected with notice as to defenses against all of the notes though on their face some of them are not then due." See 8 C. J. 410, 416. It will be noted that this provision in the note does not say the same shall become due and payable at the "option" of the holder. The contract in the note is to make the note due and payable. Thus the finding for the defendants on both notes must be a finding of failure of consideration and breach of warranty and the establishment of the defense against the plaintiff on exhibit B.

But plaintiff says it was a holder in good faith with reference to exhibit A. In this connection we will refer to complaints against a portion of the charge to the jury. The evidence presented by plaintiff regarding this note, and pertinent to the issue, may be summarized as follows: J. S. Hall was the president and manager of the Hall Manufacturing Company and M. V. Kehoe was the secretary; both Hall and Kehoe were stockholders in plaintiff bank and Mr. Hall was one of the directors of the bank; the dealings between the two

corporations with reference to the note were conducted solely by Mr. Hall and by the cashier of the bank; the bank bought the note "without recourse" and paid for the same by giving the Hall Manufacturing Company credit on its checking account; it was not the custom of the bank to buy the notes of nonresidents of the state, but it was its custom to make an investigation of the makers; the only investigation made as to the makers of these notes was inquiries from Mr. Hall himself; the purchase of notes was left generally with the discount committee, but the directors had their monthly meetings and would pass upon and approve the action of this committee; Mr. Hall was present at the meeting when this was done, but the purchase of the notes was not discussed. The testimony of the plaintiff further shows that the funds credited to the Hall Manufacturing Company on their checking account because of the purchase of this note were not withdrawn from the bank before the bank received notice of the claims of the defendant as the cashier himself when asked by his counsel: "You may state whether or not the funds were withdrawn from the bank before you had any notice of the claims made by A. H. Snoozy and Ed Snoozy as set up in this case?" He answered, "No." The plaintiff does not show how such money was withdrawn or checked by the Hall Manufacturing Company before the bank received notice of the claims of the defendants.

In this connection the court charged the jury to the effect that in order to constitute the bank a bona fide holder for value it was not sufficient to give the payee of the note credit upon its books for the proceeds, that such relationship was that merely of debtor and creditor, and "as long as the amount which is credited remains undrawn by the depositor, the bank, if it receives notice of the fraud or of the defect in the title or of the defense made thereto, is still in a position to return the note to the depositor and cancel the credit." Plaintiff claims this is misleading as not taking into consideration the withdrawal of funds, the burden of proof as to the withdrawal, and was erroneous, that the credit was sufficient value. Credit on the books is value but it is not sufficient until it is paid out. It is the credit and the withdrawal that makes the payment. In First Nat. Bank v. Persall, 110 Minn. 333, 136 Am. St. Rep. 499, 125 N. W. 506, it is said: "While a mere credit entry upon the books of a bank does not of itself amount

to the payment of a valuable consideration, the withdrawal by check of a substantial part of the amount so credited is such payment." The same proposition is set forth in Fredonia Nat. Bank v. Tommei, 131 Mich. 674, 92 N. W. 348: "The bank was a bona fide purchaser of the notes because it paid for them by crediting the amount thereof upon . . . account and permitting him to check it all out before their maturity."

The question of whether credit on the checking account is of sufficient value to make the indorsee a holder in due course was suggested to this court in the case of First Nat. Bank v. Wells County, 54 N. D. 502, 209 N. W. 965, and while it was not necessary in that case to determine the matter, yet this court suggests that the general rule as set forth in 8 C. J. 482, 483, is the proper rule, though it was unnecessary in that case to determine the matter because "the credit was utilized before the event which entitled the indorsee to erase it had been determined." A bank may be a holder in due course because of the credit for it incurs liabilities, but it becomes a limited holder if it has not paid out the full amount before notice of defect, as indicated by § 6939 of the Code. In the case of Shawmut Nat. Bank v. Manson, 168 Mass. 425, 47 N. E. 196, the court says: "A bank which credited the amount of a check to the payees and permitted them to draw against it before it received notice through the clearing house that the check has been dishonored is a holder for value."

Even if the plaintiff purchased exhibit A in good faith without notice and before maturity, yet it is clear from the testimony of the cashier that the only payment given was a credit on the checking account of the Hall Manufacturing Company and this credit was not exhausted at the time the plaintiff received notice regarding a defective title. Credit on the books of the bank would be "value" but it was the duty of the plaintiff to withhold any balance remaining immediately upon receiving notice, if it wanted to remain a holder in due course. See § 6939 of the Code.

The trial court did not show upon whom was the burden of proof. The plaintiff is not injured by this. The burden of proof was upon it to show the amount was checked out and no request for such instruction was made. It is the duty of the plaintiff to show how much it did pay. The evidence shows some amount was checked out. Some

question is raised as to subsequent deposits but though subsequent deposits may have been made this would not authorize plaintiff to withhold the credit from these deposits—it is only the amount of the credit given that is involved. See Fredonia Nat. Bank v. Tommei, 131 Mich. 674, 92 N. W. 348.

The plaintiff complains of instructions given, with reference to warranties and statements made at the time the transaction was entered into. We have examined these and find nothing erroneous therein.

Complaint is made of the following instruction. "The burden is on the plaintiff to establish his good faith. Either he must establish his good faith by direct and uncontradicted testimony or by circumstances which showed unequivocal evidence of good faith. The testimony must not only be such as to show consistently good faith in such purchase, but it must also be such that no fair-minded person can draw any other inference therefrom."

Where plaintiff is required to establish good faith in the purchase of the note it is not required to prove the same by a greater degree of proof than required for any other fact—that is, the preponderance of the evidence. There being no special findings we do not know whether the jury found against the plaintiff, because it had not proved good faith as required by the trial court, or because it had not proved how much of the credit was checked out before notice of defect was received. It appears to the court that if plaintiff purchased in good faith it may be able on a new trial to supply the defect in proof, and we are constrained to reverse the case so far as exhibit A is concerned, to give plaintiff the opportunity of having its good-faith purchase determined by the jury under proper instructions, and to show, if it can, how much was paid out before notice, in case a good-faith purchase is proved. The judgment is reversed as far as exhibit A is concerned, with costs to plaintiff.

BIRDZELL, Ch. J., and BURKE, CHRISTIANSON, and NUESSLE, JJ., concur.