**DEITRICK et al. v. MacCARTHY et al.**
(two cases).

Nos. 6007, 6008.

District Court, D. Massachusetts.

Feb. 6, 1936.

A. J. Aldridge, of Boston, Mass., for plaintiffs.

J. Joseph MacCarthy and John W. Ceaty, both of Worcester, Mass., for defendants.

BREWSTER, District Judge.

These two actions are brought by the receiver of the Federal National Bank of Boston against the makers and against the first indorser of two checks. One check, drawn by the Lumberman's Mutual Casualty Company, was for $110.73. The other, drawn by the United States Fidelity & Guaranty Company, was for $453.25. Both checks were made out to the order of the defendant J. Joseph Mac-Carthy, a Worcester attorney, and were indorsed by him, without restriction, to the Bancroft Trust Company, a Worcester bank. They were given to the Bancroft Trust Company on December 12, 1931, accompanied by a deposit slip which contained the following language:

"In receiving items for deposit or collection, this Company acts only as depositor's collecting agent and assumes no responsibility beyond the exercise of due care. All items are credited subject to final payment in cash or solvent credits. This Company will not be liable for default or negligence of its duly selected

correspondents nor for losses in transit and each correspondent so selected shall not be liable except for its own negligence. This Company or its correspondents may send items, directly or indirectly, to any bank including the payor, and accept its draft or credit as conditional payment in lieu of cash; it may charge back any item at any time before final payment, whether returned or not, also any item drawn on this Company not good at close of business on day deposited."

One check was drawn on a bank in Chicago; the other was drawn on a bank in Baltimore. They were immediately indorsed by the Bancroft Trust Company to the order of any bank or trust company. They were then sent by the Bancroft Trust Company to the Federal National, where the Bancroft kept a regular commercial account, accompanied by a deposit slip dated December 14, 1931. The checks then went in the regular course to the Federal Reserve Bank of Boston, but, when payment was later stopped, they were charged back to the Federal National. The Federal National did not charge them back to the Bancroft, although it had a right to do so, because both banks failed at the close of business on December 14. The deposit ticket used by the Bancroft in sending items to the Federal National contained nothing of importance. The statement of the Federal National to the Bancroft, however, contained the following notices:

"All items are credited subject to final payment.

"This bank will use due diligence in its endeavor to select responsible agents, but will not be liable in case of their failure or negligence, nor for loss of items in the mail.

"A service charge of $1 is made on active accounts if average collected balance for previous month is less than $300."

It was also shown that the regular practice between the two banks was to divide items sent from the Bancroft into two groups. Those marked "C. L." on the account appearing on the books of the Federal National were considered deposit items, and were credited immediately subject to being charged back if not collected. The other group was marked "Coll," and was handled by the collection department of the Federal National, and was not credited at all until collected. The checks in question were handled in the former manner. The account of the Bancroft in the Federal National was overdrawn at the close of business on December 14 to the extent of $16,372.78. There was no question as to the sufficiency of presentment in the case of the check drawn by the Lumberman's Mutual. All formalities were taken to hold the parties. The check of the United States Fidelity & Guaranty Company, however, was presented to the drawer, instead of to the drawee. Both checks were refused because payment was stopped. This was done at the request of the defendant MacCarthy, because of the failure of the Bancroft Trust Company.

 That the presentment was sufficient to charge the drawer cannot be doubted. Section 79 of the N.I.L., Mass.Gen.Laws (Ter.Ed.) c. 107, § 102, Md.Ann.Code of 1924, art. 13, § 98, provides:

"Presentment for payment is not required in order to charge the drawer where he has no right to expect or require that the drawee or acceptor will pay the instrument."

Where payment on the check has been stopped, the drawer certainly has no right to expect that the check will be paid, and hence presentment is not necessary to charge him. Usher v. A. S. Tucker Co. (1914) 217 Mass. 441, 105 N.E. 360, L.R.A.1916F, 826. Section 82 of the N.I.L., Mass.G.L.(Ter.Ed.) c. 107, § 105 (Md., § 101), provides:

"Presentment for payment is dispensed with:

"1. Where after the exercise of reasonable diligence presentment cannot be made;

"2. Where the drawee is a fictitious person;

"3. By waiver of presentment, express or implied."

Where payment was stopped at the request of an indorser, it constitutes an implied waiver of presentment.

 The plaintiff did not seriously contend that the liability of the defendant MacCarthy as indorser had been duly fixed respecting the draft of the United States Fidelity & Guaranty Company. As between the defendant MacCarthy and the Bancroft Trust Company, the latter was an agent for collection only, and the former held the beneficial interest in the check until it was finally collected. The deposit slip used states in clear and un-

ambiguous terms that the Bancroft Trust Company is to act only as collecting agent, and there was no attempt made by either party to change the relationship at any subsequent time. There was no restriction of the indorsement, however, and the fact that the defendant was the beneficial owner of the check was not enough to prevent subsequent indorsees from becoming holders in due course unless they took with notice of the rights of the defendant. Mass.Gen.Laws (Ter.Ed.) c. 107, § 79, provides:

"To constitute notice of an infirmity in the instrument or defect in the title of the person negotiating the same the person to whom it is negotiated must have had actual knowledge of the infirmity or defect, or knowledge of such facts that his action in taking the instrument amounted to bad faith."

There was no evidence in this case of any actual notice of any defect in the title of the Bancroft Trust Company; nor can the circumstances be said to be such that the plaintiff's action in taking the instrument would amount to bad faith. The determination of this case, therefore, must depend wholly upon the relation between the Federal National and the Bancroft Trust Company as to these particular checks. If the understanding between the two banks was, as is contended by the defendant, that the Federal National was only an agent to collect for the Bancroft Trust, then the plaintiff cannot recover in this action, because all authority to act as agent terminated with the insolvency of the two banks. Salem Elevator Works v. Com'r of Banks, 252 Mass. 366, 148 N.E. 220; South Carolina National Bank of Charleston v. McCandless (C.C.A.) 44 F.(2d) 111; Ellerbe v. Studebaker Corporation of America (C.C.A.) 21 F.(2d) 993.

If, on the other hand, the Federal National became a holder in due course of the checks, then it is entitled to hold prior parties upon the nonpayment of the checks, and the receiver is entitled to maintain this action.

■ So far as appeared from the evidence, the Federal National became the owner immediately of checks indorsed without restriction, and sent down by the Bancroft for deposit as in the present case. In the absence of something to the contrary, a bank taking paper indorsed to it without restriction is deemed a purchaser of the paper. Salem Elevator Works v. Com'r of Banks, supra; Taft v. Quinsigamond National Bank, 172 Mass. 363, 52 N.E. 387; Dakin v. Bayly, 290 U.S. 143, 54 S.Ct. 113, 78 N.E. 229, 90 A.L.R. 999.

■ The only evidence in the present case to show any agreement to the contrary is the notice appearing at the top of the statement of the Federal National to the Bancroft Trust. The language of this notice is not enough to constitute the Federal National an agent. The first sentence says: "All items are credited subject to final payment." It is clearly settled law in the federal courts that the mere fact that items are credited conditionally is not enough to alter the usual relation. City of Douglas v. Federal Reserve Bank, 271 U.S. 489, 46 S.Ct. 554, 70 L.Ed. 1051; Burton v. United States, 196 U.S. 283, 25 S.Ct. 243, 49 L.Ed. 482.

■ The second sentence provides: "This bank will use due diligence in its endeavor to select responsible agents, but will not be liable in case of their failure or negligence, nor for loss of items in the mail." This language cannot be construed as an agreement that the Federal National should itself be only an agent in the case of all items deposited with it, since it might refer only to items indorsed for collection or items otherwise sent to it where the depositor had indicated a desire that the Federal National act only as collection agent.

■ In the case of these particular checks, there is another circumstance which indicates that the Federal National took a beneficial interest in them. At the close of business on the day they were deposited, the account of the Bancroft Trust in the Federal National was overdrawn. Where the original relation is one of principal and agent, but the forwarding bank asks and receives credit against uncollected checks, it is fair to imply a contract between the banks to change the relation, so that the collecting bank may have the security of the checks for its loan. Similarly, where checks are deposited in an account at the time overdrawn, the same considerations strongly imply that in such case, whatever the previous relations of the banks with regard to similar paper, the collecting bank becomes the owner of the checks. There is some split of authority whether such an im-

plication arises. The Supreme Court of Massachusetts has held that it does not, in a case very similar to the present on its facts. See American Barrel Co. v. Com'r of Banks (Mass.) 195 N.E. 335. But the authorities in the federal courts and other state courts are to the effect that, where the collecting bank actually waives any conditions in its favor and grants unconditional credit on uncollected paper, it becomes a holder in due course of the paper as security. Pearson v. Brennan (C.C.A.) 75 F.(2d) 958; Amalgamated Sugar Co. v. United States National Bank of Portland, Or. (C.C.A.) 187 F. 746; Old National Bank of Spokane v. Gibson, 105 Wash. 578, 179 P. 117, 6 A.L.R. 247; Bath National Bank v. Ely N. Sonnenstrahl, Inc., 249 N.Y. 391, 164 N.E. 327; First National Bank of Minneapolis v. Wells County, 54 N.D. 502, 209 N.W. 962.

While the Massachusetts decision is the more recent from the point of view of time, since the case really turns on the relation between the two banks as to the checks rather than on the interpretation of the Negotiable Instruments Law, I consider myself bound by the decision in Pearson v. Brennan, supra.

■ If the Federal National Bank took any beneficial interest in these checks, it is perfectly clear that they gave value, so as to make them a holder in due course. Mass.Gen.Laws (Ter.Ed.) c. 107, § 48, provides:

"Value is any consideration sufficient to support a simple contract. An antecedent or pre-existing . debt constitutes value, and is deemed such whether the instrument is payable on demand or at a future time."

I conclude, therefore, that the Federal National Bank became a holder in due course of the checks in question and, as such, is entitled to recover in this action.

It follows that in law No. 6007 the plaintiff is entitled to a judgment against the defendant United States Fidelity & Guaranty Company for $453.25 plus $2.43, protest fees, and interest according to law.

In that case, judgment for the defendant MacCarthy may be entered.

In law No. 6008, plaintiff is entitled to a judgment against each defendant for $110.73 plus $3.12, protest fees, and interest according to law.