### J. R. Eason v. Isadore Locherer.

1. PROMISSORY NOTE—PARTIES—OFFSET. The payee of a note, who as-signed the same to avoid the payment of debts, indorsed upon it at the time of the assignment a credit for an amount agreed to have been due from the payee to the assignee. Upon the assignment, in a suit by such assignee, *held,*

　　1st. That the assignee having by virture of the assignment the legal title to the note, could maintain a suit in his own name thereon, and upon recovery could retain as his own the amount of the credit, and hold the balance in trust as the property of the original payee.

　　2d. That the maker could offset any valid claim held against the original payee to extent of the balance over and above the credit in-dorsed.

　　3d. Even if the credit indorsed was a fictitious and not a real trans-action, the assignee could still sue on the note, for the benefit of the payee or for his own benefit, and in such case the maker can offset any valid claim against the original payee to the full amount of the note. If the offset established is for a less amount than the note and interest, then the assignee is entitled to judgment for the overplus.

2. PROMISSORY NOTE—CHARGE OF COURT. In such a case the jury pro-pounded the following question to the Court : "To the Judge :—If your " Honor please, the jury would like to know, in case they find that the " note is not A's (the plaintiff and assignee), can they find for B (the orig-" inal payee).—*Jury."* *Held,* That it was error not to instruct to the effect that if B had the right to recover any thing had he been the plaintiff, A, his assignee, was entitled to recover for him whatever he might have recovered for himself, and that without reference to whether the assignment of the note was based on a valuable considera-tion or not.

APPEAL from Victoria, tried below before the Hon. T. C. Barden.

Prior to the war, and up to September, 1862, Ragland and

Coller were partners in mercantile business, and owned a store-house and lot in Victoria. About September, 1868, they closed up their business, sold out their remnant of goods, and divided their notes and accounts, but continued to own the storehouse and lot in common.

In August, 1866, Coller negotiated the purchase of Rag-land's interest in this storehouse property, at the price of two thousand five hundred dollars, specie. Thirteen hundred dollars were paid about the time of the purchase, and for the balance the note sued on was given. Ragland and Coller conveyed to Locherer, and the note for the unpaid balance of the purchase money was executed by Locherer and Coller. Coller immediately took actual possession of the storehouse, converted the upper story into a dwelling-house, and moved in with his family. The evidence conduced to show that the purchase of Ragland's interest was for Coller's benefit, and that if Locherer had any interest it was simply to hold the title as a security for money previously advanced to Coller, who was his step-son.

The note was executed and dated August 3d, 1866, and was payable to Ragland, or bearer, six months after date. On the 17th of August, Ragland assigned and transferred the note to Eason, the plaintiff.

This was a suit by Eason to collect the note, and for that purpose to enforce the vendor's lien.

Coller, having gone into bankruptcy, was not sued.

Various matters were alleged by way of defense. One was that the transfer of the note by Ragland to Eason was not for a valuable consideration, but was merely colorable, and was intended to hinder and delay creditors. Another was that the property had been sold by the sheriff upon execution against Ragland & Coller, and that thereby Ragland's covenant of warranty was broken, and the consideration of the note had failed. But the evidence conduced to show that only about four hundred dollars currency was due upon the execution; that Coller who managed business for himself and Locherer,

and who was one of the grantors and warrantors in the deed, willingly permitted the property to be sold, and procured it to be bought in for his own use and benefit, and continued to occupy it as before.

Defendant also pleaded several amounts in set-off and re-convention. Among these was the sum of two hundred and sixty-seven dollars, and seventy-four cents, the amount of an open account against Ragland, accrued after the execution of the note. The main item of set-off was the sum of one thousand seven hundred and forty-four dollars and fifty-four cents, claimed to have been due from Ragland to Coller, and which, according to the paper filed, purported to have been transferred by Coller to Locherer on the 6th day of August, 1866. The greater part of this claim was based on an alleged balance against Ragland on the partnership books, in 1862, which the plaintiff alleged was a balance due in confederate money, and which had been settled before the execution of the note sued on.

In regard to the transfer of the note to Eason, the evidence was to the effect that Ragland took the note, with other claims, to Eason, and said he wished to transfer them to him; that he wished to ward off some creditors, whose claims he did not consider just, until he could effect a compromise with them. That, at the same time, he mentioned to Eason that he owed him for board of himself and family, and that he wished Eason to pay himself out of the claims. That all the claims, except this note, either proved worthless, or were afterwards returned to Ragland. Eason's claim for board was about six hundred dollars, and he receipted for it when he received the transfer of the claims.

After the retirement of the jury, they sent into court the following inquiry :

" *To the Judge :* If your Honor please, the jury would like " to know, in case they find the note is not Eason's, can the ' jury find for Ragland ?"

Whereupon the court had the jury brought in, and instructed them as follows :

"*Gentlemen of the Jury:* In response to your inquiry
" whether, in case you find the note is not Eason's, you can
" find for Ragland, you are instructed that James N. Ragland,
" the indorser of the note, is not a party to this suit, so that
" the question for you to determine is, whether the plaintiff,
" Eason, is entitled to recover. If he is not entitled to recover
" on the note, then the finding of the jury should be in favor
" of the defendant."

There was a verdict and judgment for the defendant, from
which the plaintiff appealed.

*Glass & Callender*, for appellants, cited Thompson *v.* Cart-
wright, 1 Texas, 87; Barnett *v.* Logue, 29 Texas, 282.

*Philips, Lackey & Stayton*, for appellee.

ROBERTS, C. J. This is an action by Eason against Loch-
erer, on a note assigned to Eason by Ragland before its
maturity, to pay Eason a board bill, in amount less than the
note, which Eason, being a relative of Ragland, did not demand
payment of, but which Ragland insisted on paying, and which
board bill was receipted upon the delivery of the note. It is
shown that Ragland placed this note, with other claims, in the
hands of Eason, in anticipation of debts coming against him,
that he did not wish to pay, of which Eason was informed at
the time. There is no evidence that Eason knew of any offset
against the note, nor that Ragland made the assignment of the
note to Eason before it was due, to avoid or prevent any offset
or defense to it. If this was an earnest and real transaction
between Ragland and Eason, as to the payment for the board,
the assignment vested in Eason the legal title to the note, and
the right to sue in his own name, and upon recovery to retain
the amount of his board bill as agreed on, as his own property,
and to hold and retain the balance recovered as the property
in trust for Ragland. And in such event, Locherer could off-
set any valid claim which he had against Ragland, to the
extent of such balance over and above the said board bill.

But if the settlement of the matter about the board was not a real and earnest transaction, still the assignment of the note vested in Eason the legal title to the note, and the right to sue in his own name for the recovery of the amount due thereon, for the benefit of Ragland, or for his own benefit, if Ragland should choose to let him keep it, or if it was so tainted with fraud, as a fraudulent conveyance, as that Ragland had lost the right to reclaim it.

And in such event, Locherer would have the right to offset any valid claim which he had against Ragland, to the full amount of the note sued on, if he established his claim to that amount, thereby defeating Eason's action, and if Locherer's claim was established for a less amount than the note and interest thereon, then Eason would be entitled to recover the overplus.

Such are the rules pertaining to the plaintiff's right of action on the note.

The offsets of Locherer were open accounts, claimed to be due from Ragland to him. One was an account contracted with Locherer by Ragland, after the note was given and transferred to Eason ; one was a debt claimed to be due from Ragland to Coller, as a balance upon a settlement of the partnership business of Ragland & Coller in 1862, long before the note was executed by Coller & Locherer in part payment of the house and lot deeded by Ragland & Coller to Locherer; and another was a debt, claimed to be due to Coller from Ragland, for sums of money paid by Coller to the creditors of the firm of Ragland & Coller, after the note was given; both of these accounts, claimed to be due to Coller from Ragland, were alleged to be assigned by Coller to his step-father, Locherer, before suit was brought on the note, for the purpose of offsetting them against the note. They were transferred to Locherer, as well as the house and lot, which was valued at five thousand dollars (as is alleged), to secure Locherer in a debt of about two thousand dollars for money advanced and board' furnished to Coller by Locherer. The evidence shows that
12

Locherer knew very little about these transactions, having left it all to be managed by his step-son, Coller, who took possession of the house and lot, when the note was given in 1866, and has had the entire use of it ever since.   Coller became a bankrupt in 1868, and though a joint maker with Locherer, was not sued in this action.   Another offset claimed was, in the loss of the house and lot, deeded with full warranty of title from Ragland & Coller to Locherer, by its being sold and bought by Coffe, under an execution against Ragland & Coller, founded on a judgment, that constituted a lien at the time of the execution of the deed and note.   The evidence shows that Coffe bought in the lot at a very reduced price for Coller.

The validity of these defenses depends upon the construction to be put upon the facts, and the presumptions reasonably deducible from them.

As to the first-named account, due from Ragland directly to Locherer, there seems to be no controversy.

As to the balance, upon the settlement of the partnership in 1862, the questions are, was it a balance due in Confederate money, and if so, what was it worth ; and was it not regarded as closed and settled when Coller & Locherer gave their note to Ragland in part payment for his half interest in the house and lot in 1866, which was the last piece of property belonging to the firm of Ragland & Coller, the object of said sale being to divide the value of the same, their other joint effects having been divided when they dissolved their partnership and quit business in 1862?   If so, it would not be a valid offset.

As to the partnership debts paid by Coller after giving the note, including the judgment under which Coffe bought in the house and lot for Coller, the questions are, *first*, is not Locherer holding the legal title to the house and lot for the benefit of Coller? and *second*, was not the sale of the half-interest of the same from Ragland to Coller intended to be a final settlement, and division of their partnership interests in all respects, both parties having equal knowledge of the lien, and

other outstanding liabilities of the firm? If so, they would not be valid offsets.

If, however, it were shown that this note was given as an isolated transaction, and not as a final settlement between Coller & Ragland, or although it was a final settlement, if by mistake these matters of indebtedness were left out, and not by design, they would be valid offsets to the extent of Ragland's equitable interest in the note.

Such are the rules pertaining to the matters in defense.

The evidence tends strongly to establish, that both Ragland and Coller had put their property out of their hands, and that they are the real parties in interest in this suit, which is being carried on for them by proxy, through Eason on one side, and Locherer on the other, both of whom were acting under a pretended claim, based upon a pretended and not a real consideration.

The jury, it may be, seeking to penetrate the maze of fiction in which the case was involved, in order to reach a starting-point of solid reality, within their comprehension, propounded the question to the Court, as follows:

" *To the Judge:* If your honor please, the jury would like " to know, in case they find the note is not Eason's, can the " jury find for Ragland?

						" Jury."

To which the Judge responded as follows:

" *Gentlemen of the Jury :* In response to your inquiry " whether, ' in case you find the note is not Eason's, you can " find for Ragland,'

" You are instructed that James N. Ragland, the indorser of " the note, is not a party to this suit. So that the question you " are to determine is, whether the plaintiff Eason is entitled to " recover ; if he is not entitled to recover on the note, then the " finding of the jury should be in favor of the defendant."

Whereupon the jury found a verdict for the defendant.

This charge was well calculated to mislead the jury. For if Ragland had the right to recover anything on this note, if

he had been the plaintiff, then, he having assigned the note to Eason, Eason was entitled to recover for him whatever he, Ragland, would have, as plaintiff, recovered for himself. That was the legal effect of the assignment of the note, whether it was based upon a valuable consideration or not, so far as the defendant was concerned, and the jury should have been so instructed in response to their question. The assignment of the note was not contested either in the pleading or in the evidence, and therefore it was legally impossible for the jury to find, as by their question they supposed they could, that "the "note is not Easons," for the purposes of this suit, so far as the defendant was concerned. This illegal assumption, involved in the question of the jury, was not corrected, but rather confirmed by the answer of the judge.

Believing that this charge in response to the question was sufficient to mislead the jury from the real, to an immaterial issue, upon which the case was made to depend, we think it a good ground for a reversal of the judgment.

Judgment reversed and cause remanded.

Reversed and remanded.