GEORGE MORTON, Respondent, v. ALBERT WOOLERY, FRED W. BRENDEMUHL, FARMERS BANK OF DUNN COUNTY, a corporation, Appellant.

(189 N. W. 232.)

**Banks and banking — bank bound by conditions imposed by depositor in making deposit.**

1. Where a person makes a deposit in a bank for the specific purpose of meeting certain checks to be thereafter issued, the bank on accepting the deposit becomes bound by the conditions imposed, and if the money so deposited is misapplied it can be recovered as a trust deposit.

**Appeal and error — submission of case on theory on which it was tried not error; submission of question which should have been determined by court to the jury held harmless in view of jury's finding; refusal to require witness to testify what he meant by certain statement held not error.**

2. Certain assignments of error predicated upon instructions given to the jury and rulings made in the admission and exclusion of evidence examined, and for reasons stated in the opinion *held* to be nonprejudicial.

Opinion filed June 27, 1922.

From a judgment of the District court of Dunn county, *Berry* J., the defendant, Farmers Bank of Dunn County, appeals.

Affirmed.

*W. A. Carns,* and *Alf. O. Nelson,* for appellant.

*T. F. Murtha,* for respondent.


CHRISTIANSON, J.   Plaintiff brought this action to recover upon a check drawn on the defendant bank by the defendant Woolery and payable to the plaintiff or his order.   The evidence shows that the plaintiff is a farmer who lives about 15 miles from Dunn Center, where the defendant bank is located.   The defendant Woolery is a cattle buyer, and in the fall of 1920 and prior thereto he had been buying cattle in the vicinity of Dunn Center.   He carried on his banking business with the defendant bank, wherein he had two accounts, one of which was carried on the books in his own name, and the other as "A. Woolery, cattle account."   It was his custom to make a notation on each check given for cattle to the effect that it was given for cattle, and the checks so marked would be charged to the account carried as "A. Woolery, cattle account." It appears that in September, 1920, this account was overdrawn as a result of some losses in the cattle business.   About the middle of October, 1920, Woolery purchased 17 head of cattle from the plaintiff, agreeing to pay therefor the sum of $620.   He arranged with the plaintiff to have the cattle delivered at Dunn Center on October 21, 1920, where Woolery agreed to pay for the same.   The plaintiff, Morton, drove the cattle to Dunn Center on the day agreed upon and delivered the cattle to Woolery and received from him a check for $620 dated on that day, namely, October 21, 1920, payable to plaintiff and drawn on the defendant bank.   In the lower left-hand corner of the check appeared the words "17 cattle." Plaintiff deposited this check with the bank where he carried his account at Manning, in this state, and in due time it was presented to the defendant bank, but payment was refused for want of funds.   According to the testimony of the assistant cashier of the defendant bank, the defendant Woolery came to the bank prior to October 21, 1920, and asked the assistant cashier if the bank would honor his checks to be issued in payment of a carload of cattle that were to be delivered to him in Dunn Center that day for shipment, provided that he (Woolery) would draw and deposit a sight draft for $1,600 on the Prouty Commission Company, to whom the cattle were to be consigned.   At the time Woolery told the assistant cashier that the checks he would issue in payment of cattle

which he would purchase for such shipment would aggregate some $1,600, and might exceed that sum, but would not exceed $1,700. The assistant cashier thereupon ascertained the status of Woolery's account and found that he had a balance in the cattle account of about $145. The assistant cashier agreed to the proposition made by Woolery. The $1,600 sight draft was drawn by Woolery and handed to the assistant cashier for deposit, he prepared a deposit slip crediting the $1,600 to the "cattle account," and it was carried by the bank as a cash item until the close of business on October 23, 1920, when it was deposited and credited on the books of the bank to "A. Woolery, cattle account." It appears that on that day the bank paid two checks drawn upon such account in payment of cattle included in the shipment, namely, one to Minneau for $1,030, and one to Joslyn for $40. It appears further that there were a number of checks that had been drawn by Woolery during September, 1921, against the cattle account, and which had previously been presented to the bank, and payment of which had been refused for want of funds. Some of these checks were again presented on or about October 23 or 24, 1921, and the bank paid out practically all the balance of the funds on hand in the cattle account upon such checks; and when the check drawn in favor of the plaintiff Morton was presented some time between October 28th and November 1st there were not sufficient funds in such "cattle account" and payment thereof was refused. Thereafter this action was brought against the bank by the plaintiff, claiming that the bank had no right to pay the old dishonored checks; that the funds in the cattle account on October 21, 1921, and subsequent thereto realized from the $1,600 sight draft, and the $145 on deposit at the time Woolery made the arrangement with the assistant cashier of the bank, was, under such arrangement, held for the special purpose of paying checks issued for cattle contained in the particular shipment against which the sight draft was drawn. The case was tried to a jury, which returned a verdict in favor of the plaintiff. Upon the return of the verdict defendant moved for judgment notwithstanding the verdict. The motion was denied. Thereafter judgment was entered pursuant to the verdict, and defendant has appealed from the judgment.

The principal contention advanced by the defendant on this appeal is that the evidence is insufficient to sustain the verdict, and that the court should have directed a verdict in its favor, or ordered judgment notwithstanding the verdict. The motion for a directed verdict was in substance that the plaintiff had failed to show that the $1,600 deposited by

Woolery in the defendant bank was a trust fund, and had failed to prove that there was any agreement that such funds should be retained as a trust fund for the payment of any particular check or checks.

In support of this contention it is asserted by the defendant bank that the deposit of the $1,600 was a general one, and that the bank was entirely within its rights, and properly performed its duties, when it paid checks as presented, even though such checks were old ones which had been drawn and presented for payment, and payment of which had been refused by the bank long prior to October 21, 1921.

In our opinion the contention cannot be sustained. We believe there is abundant evidence tending to sustain a finding that the $1,600 draft was deposited for a special purpose, namely, the payment of checks to be thereafter drawn by Woolery in favor of the various parties from whom he would purchase cattle for that particular shipment. The bank knew that Woolery would purchase cattle for such shipment, and draw checks upon the "cattle account" in payment of cattle so purchased. It was informed that the amount of checks to be drawn would be not less than $1,600, might run something over that, but would not exceed $1,700. The bank knew that the old checks were not drawn in payment of any cattle included in the shipment designated by Woolery at the time he deposited the $1,600 draft. It knew that those checks had been issued long prior thereto, and had been issued for other purposes, And, when the bank honored such old checks, it must have known that it was not likely that all checks drawn by Woolery in payment of the cattle included in the carload against which the sight draft was drawn had been presented.

Where money is deposited for a special purpose, as for instance in this case where it was deposited for the stated purpose of meeting certain checks to be thereafter drawn against such deposit, the deposit does not become a general one, but the bank, upon accepting the deposit, becomes bound by the conditions imposed, and, if it fails to apply the money at all, or misapplies it, it can be recovered as a trust deposit. Hitt Fireworks Co. v. Scandinavian-American Bank, 114 Wash. 167, 195 Pac. 13, 196 Pac. 629; Dolph v. Cross, 153 Iowa, 289, 133 N. W. 669; First Nat. Bank v. Barger et al. (Ky.) 115 S. W. 726; Smith v. Sanborn State Bank, 147 Iowa, 640, 126 N. W. 779, 30 L. R. A. (N. S.) 517, 140 Am. St. Rep. 336. See, also, Russell v. Bank of Nampa, 31 Idaho, 59, 169 Pac. 180; Bank v. Miller (N. D.) 179 N. W. 997; 7 C. J. 632.

In its instructions to the jury the trial court said:

"The plaintiff claims that he sold 17 head of cattle to Woolery and

received a check of $620 for the cattle. He also claims that the bank, defendant Farmers' Bank of Dunn county, had made a trust agreement with Mr. Woolery whereby there was a fund that was specifically set aside to pay the checks for the cattle for this particular shipment, and that they, contrary to the terms of trust, used this money and did not pay his $620 check."

It is contended that this instruction was prejudicial for the reason that it did not state the contentions of the plaintiff as stated in the complaint. It is true the allegations of the complaint were somewhat restricted, and seem to have been predicated upon the theory that there was an agreement on the part of the defendant that it would pay all checks drawn by Woolery in purchasing cattle to be included in the particular shipment against which the sight draft was drawn, and that consequently the bank under its agreement was obligated to pay the check in question regardless of the amount of funds on deposit in the "A. Woolery, cattle account." The court in its instructions in effect eliminated the theory that the bank was obligated to pay the check as a result of the agreement to pay all checks drawn in payment of such cattle, and submitted the case on the theory that the bank was liable only in the event there was an understanding that the moneys deposited in the cattle account should be utilized for the special purpose of paying checks thereafter issued by Woolery in payment of cattle to be included in that particular shipment. It will be noted, however, that these instructions were in accord with the theory of defendant's motion for a directed verdict. No contention was advanced at any time during the trial that there was any variance between the allegations of the complaint and the proof; and, as already indicated, at the close of plaintiff's case, and again at the close of the introduction of all the evidence, defendant's counsel moved for a directed verdict on the specific grounds that the plaintiff had failed to prove that the $1,600 draft was deposited as a trust fund, or that there was any agreement between Woolery and the bank that it should be so treated. So we are of the opinion that, as the case stood at the time the instructions were given, the court was correct in submitting the case to the jury on the theory on which it was submitted. The trial court gave instructions covering the question of the creation of a trust fund. The instructions embodied the statutory rules on the subject, and an examination of the instructions leads us to the conclusion that they were fair to the defendant.

It is further contended that the question of whether a trust was or was not created was one of equitable cognizance, and consequently should

have been determined by the court, and not submitted to the jury. If this be true, then the action of the court in submitting the same to the jury was manifestly not prejudicial to the defendant. It received a finding of both the court and the jury on that proposition. And, as we have already stated, we are all agreed that there is abundant evidence tending to establish that the $1,600 draft was deposited for a designated special purpose.

When the assistant cashier was being examined by defendant's counsel on redirect examination, he was asked what he meant by a certain statement which he said he had made to Woolery at the time Woolery deposited the $1,600 draft. Plaintiff's counsel objected to the question on the ground that the words used were plain, and not susceptible of interpretation. The objection was sustained and error is assigned upon this ruling. In our opinion the ruling was correct. The language used was not technical in any sense. And manifestly the agreement between Woolery and the bank did not depend upon what particular meaning the assistant cashier intended to attribute to his words. The secret intention of a party to an agreement is not material. The law looks to what the parties say as expressing their real intention. Language must be interpreted in the sense in which the promisor knew or had reason to know that the promisee understood it. 9 Cyc. 578. It will be noted the purpose of the question was not to ascertain what the agreement between the parties was but merely what particular meaning the assistant cashier intended to convey by the words he used. Furthermore, the assistant cashier was fully examined with respect to the entire conversation, and when his testimony is considered as a whole there does not seem to be the slightest reason to believe that the words which he used were intended to convey any meaning different from what the plain words imported. What has been said disposes of all the errors assigned and argued, and it follows from what has been said that the judgment appealed from must be affirmed.

Affirmed.

BIRDZELL, C. J., and ROBINSON, BRONSON, and GRACE, JJ., concur.