# COMMERCIAL NATIONAL BANK OF STURGIS, et al, Appellants, v. SMITH, Superintendent of Banks, et al, Respondents.

## (244 N. W. 521.)

(File No. 7291.   Opinion filed October 10, 1932.)

*Sterling, Clark & Grigsby,* of Redfield, for Appellants.

*Bruell & Henderson,* of Redfield, and *T. B. Thorson,* of Rapid City, for Respondent.

ROBERTS, J. The complaint alleges that the Summit Bank became insolvent, and on the 16th day of October, 1926, was taken over by the superintendent of banks for the purposes of liquidation; that the defendant Wiley made and entered into a contract with the state highway commission for gravel surfacing of a state highway in Meade county; that the payments received on the contract were delivered to the Summit Bank for deposit in the contractor's checking account for the purpose of drawing checks against the account to pay claims incurred by him for labor and materials; that defendant Wiley issued certain checks to laborers and materialmen on the Summit Bank which were cashed by the plaintiff Commercial National Bank of Sturgis and forwarded for collection in the usual course of business, and payment was refused; that the other plaintiffs named furnished to the contractor materials and supplies which were necessary in carrying out the terms of the contract and that their claims have not been paid; that the Summit Bank knowingly and unlawfully converted a large part of the proceeds of the warrants received in payment on the contract to its own use and benefit and applied the same upon an alleged indebtedness of Wiley to the bank; that the defendant Farmers' & Merchants' Bank of

Revillo had on deposit in the Summit Bank a sum of approximately $15,000 on open account; that on or about October 11, 1926, the defendant Wiley received from the state of South Dakota a warrant for the sum of $5,244.72 on his contract which Wiley delivered to the Summit Bank for the purpose of paying claims for materials and labor incurred under the contract, but the said Summit Bank wrongfully delivered and paid over to the Farmers' & Merchants' Bank of Revillo such warrant with the purpose and intent to prefer such bank as a creditor; that the said bank has failed and refused to account for the warrant or the proceeds to Wiley or to the plaintiffs; that the amounts received on the contract by Wiley were received by him from the state for the purpose of paying for labor performed and materials furnished in carrying out the terms of the contract including the claims of the plaintiffs, and constituted a trust fund for such purpose and for the benefit of the plaintiffs; and that the defendant banks and their officers and agents knew that the proceeds of the warrants constituted a trust fund, and at all times had knowledge of Wiley's contract with the state and of the fact that the proceeds of the warrants were deposited by him for the purpose of paying claims for labor and materials in carrying out the terms of the contract. The prayer of the complaint is that the superintendent of banks as receiver of the Summit Bank be required to account for all warrants and the proceeds of warrants received by the bank upon the aforementioned contract and that the warrants and proceeds be declared to be a trust fund for the use and benefit of the plaintiffs; that the sum of $5,244.72 received by the Farmers' & Merchants' Bank of Revillo be also declared to be a trust fund; and that the court direct the superintendent of banks and the Farmers' & Merchants' Bank of Revillo to pay over to the plaintiffs the proceeds of the warrants pro rata according to the amount of their several claims or so much thereof as is sufficient for that purpose.

The superintendent of banks interposed a separate demurrer to the complaint which was sustained by the trial court, and this appeal is from the order sustaining such demurrer. The other defendants named are not before this court. There are a number of grounds of demurrer, but the only ground that need be considered is that the complaint does not state a cause of action.

█ It is the claim of the plaintiffs that the amount received under the contract was a trust fund for the payment of labor performed and materials furnished in carrying out Wiley's contract with the state; that the plaintiffs are entitled to establish the amount received under the contract as a trust fund and to follow it into the hands of the defendants and to recover so much of the same as is necessary to pay the plaintiffs for materials furnished and labor performed. The plaintiff Commercial National Bank of Sturgis contends that it having cashed checks given to laborers and materialmen is subrogated to the rights of the payees. It is the general rule that if a trust fund can be traced it may be recovered. Does the complaint allege the creation and existence of a trust fund in the Summit Bank? If a trust fund is to be traced, it must be first established. It is the contention of the defendant superintendent of banks that the deposits of the proceeds of the warrants were general deposits and created the relation of debtor and creditor between the Summit Bank and Wiley.

██ A general deposit has the effect of passing title from the depositor to the bank. Such deposit possesses no trust quality and is mingled with the other funds of the bank. If insolvency ensues, the depositor shares pro rata with the general creditors. Where money is deposited for a special purpose, a special deposit is created and the bank becomes a trustee for the depositor. When such a deposit is made for a specific purpose and for the benefit of a third person, a trust relationship is created in favor of the third person. The possession in such instance does not effect a change in title to the money, but the title remains in the depositor. In the case of City of Sturgis v. Meade County Bank 38 S. D. 317, 161 N. W. 327, 328, this court said: "As a rule, when money is deposited in a bank, title to such money passes to the bank. The bank becomes the debtor of the depositor to the extent of the deposit, and, to that extent, the depositor becomes the creditor of the bank. * * * Such deposit then constitutes a part of the assets of the bank, and, in case of insolvency, belongs to the creditors of the bank in proportion to the amount of their respective claims. Exceptions to this rule are: First, where money or other thing is deposited with the understanding that that particular money or thing is to be returned to the depositor; second, where the money or thing deposited is to be used for a specifically designated pur-

pose; and, third, where the deposit itself was wrongful or unlawful.."

The deposits were not made with the understanding that the particular moneys were to be returned to the depositor, and there is no contention that the depositor had no right to deposit and the Summit Bank had no right to receive the funds deposited and that the bank held the money as a constructive trustee. Hence the first and third exceptions recognized in Sturgis v. Meade, supra, have no application.

The complaint alleges that the proceeds of the warrants constituted a trust fund for the payment of laborers and materialmen. There are no allegations of fact showing the creation of a trust, and the allegation that the proceeds paid to Wiley on his contract constitutes a trust fund is a mere conclusion of the pleader. Plaintiffs contend, however, that such allegation is sufficient in view of the provisions of section 4229, Rev. Code 1919, as amended by chapter 217, Laws 1921, which purports to create a trust relationship between a contractor and persons furnishing labor and materials as to all payments received by the contractor. The amendment of 1921 added the following provision: "And any contractor who appropriates money paid to him for any use or purpose, other than that for which he received it, is guilty of embezzlement, and the payment of laborers and material-men for work performed or material furnished in the performance of any contract is hereby declared to be the use and purpose to which the contract price of such contract or any part thereof, received by the contractor shall be applied."

It is quite evident that if this contention of plaintiffs is sustained it must be held that the statute in question is constitutional and that its provisions so entered into and became a part of the contract as to create a trust for the purposes mentioned in the act. In our opinion the Legislature is without authority to provide that a contractor shall be deemed guilty of a crime punishable by imprisonment for failure to pay the claims of creditors furnishing labor and materials from money paid to him under contract.

The statutes of California relating to embezzlement were amended in 1907 to include the appropriation by a contractor of

money paid to him for any use or purpose other than for which he receives it. Stats. 1907, p. 892. They were again amended in 1919 by adding the provision that "the payment of laborers and materialmen for work performed or material furnished in the performance of any contract is hereby declared to be the use and purpose to which the contract price of such contract, or any part thereof, received by the contractor, shall be applied." Stats. 1919, p. 1090. It is apparent that the amendment of 1921 of the provisions of section 4229, Rev. Code 1919, was taken from California. Considering the authority of the legislature to require payments to be held by a contractor for the use and purposes mentioned in the amendment, the court in People v. Holder, 53 Cal. App. 45, 199 P. 832, 834, concludes: "In our opinion the Legislature is without the power to do either of these things. That is, the Legislature has not the power to provide that a contractor who breaches his agreement to pay a certain class of debts with money that is his own shall, for that reason alone, be deemed guilty of a crime punishable with imprisonment. Nor has it the power so to interfere with the right of contract as to provide, in effect, that money paid to a contractor under his contract shall not be absolutely his own property to do with as he pleases, but shall be received by him in trust to pay a certain favored class of creditors. Any legislation that makes it a crime for one to use his own money for any purpose other than the payment of his debts is violative of section 15 of article 1 of the Constitution of this state, which expressly inhibits imprisonment for debt except in cases of fraud. * * * It is well settled that the police power cannot be made a cloak under which to overthrow or disregard constitutional rights. It is only when the general welfare, the interests of the public as distinguished from those of individuals, will be protected that the right of contract may be limited by a general exercise of the police power. * * * In view of this principle, impregnably established in our jurisprudence, it cannot successfully be contended that the amendment in question is a valid police regulation. The payment of debts that may be due laborers or materialmen is not calculated to conserve the safety, health, or general welfare of the community. There can be nothing so injurious to the public welfare in the failure of a debtor to pay his just debts as to require an exercise of the police power. In all free governments the good sense

of mankind, since the day when imprisonment for debt was abolished, has condemned and frowned down any attempt to coerce the performance of civil obligations by criminal penalties."

It will be observed that the decision is by the District Court of Appeals for the Second District for the State of California. A petition to have the case heard by the Supreme Court was denied. See, also, American Surety Co. v. Bank of Italy, 63 Cal. App. 149, 218 P. 466; People v. Perry, 99 Cal. App. 90, 277 P. 1080; Id. (Cal. App.) 291 P. 233.

We hold that the 1921 amendment to the provisions of section 4229, Rev. Code 1919, is unconstitutional; it is in conflict with the provisions of section 15 of article 6, State Constitution, which inhibits imprisonment for debt arising out of or founded on a contract. It follows that the pleading cannot be sustained upon the theory that notwithstanding the provisions of the contract the contract price constitutes a trust fund for the benefit of the plaintiffs and ohers who have contributed labor and material in carrying out the terms of the contract. The complaint fails to allege facts showing the creation of a trust as between the contractor and the plaintiffs, and the question therefore as to whether or not funds deposited by a person in a fiduciary capacity are impressed with a trust after the bank, which knew of the trust character of the funds deposited, has become insolvent, is not here reached.

The second exception mentioned in Sturgis v. Meade County, supra, has reference to special deposits. Where the depositor at the time the deposit is made enters into an understanding or agreement with the bank that the money is for a specific purpose, as funds deposited to pay a particular note, draft, or check, the deposit partakes of the nature of a special deposit and title to the deposit remains in the depositor. 7 C. J. 631; Morton v. Woolery et al, 48 N. D. 1132, 189 N. W. 232, 24 A. L. R. 1107; Payne Bros v. Burnett, 151 Tenn. 496, 269 S. W. 27, 39 A. L. R. 1125; Northern Sugar Corp v. Thompson (C. C. A.) 13 F. (2d) 829; Eshbach v. Byers, 164 Ill. App. 449; Annotations, 24 A. L. R. 1111, and 39 A. L. R. 1138.

██ It is alleged in the complaint that the warrants were deposited by Wiley in the Summit Bank for the purpose of paying claims for labor and materials incurred in carrying out the pro-

visions of the contract, and that the bank had knowledge of the purpose of such deposits. However, there is no allegation of an agreement between Wiley and the bank that the funds deposited were to be held by the bank as a special deposit or that they were to be treated by the bank in any manner different from a general deposit.

There is in equity no recognized ground by which a trust fund or converted property which was held in trust may be followed and reclaimed except where it is the property of the claimant. If he is entitled to follow and recover it, the reason is that he owns it either in the form the property had when he parted with it or in some substituted form. Fokken v. Smith, 58 S. D. 124, 235 N. W. 120. The relationship between each of the plaintiffs who furnished labor and materials and Wiley was that of creditor and debtor. The position of the Commercial National bank differs from that of the other plaintiffs in that it is the holder of a number of checks drawn by Wiley upon the Summit Bank, but there is no allegation or contention that these checks had ever been accepted by the Summit Bank. There was no assignment of the fund, and no title vested in the Commercial National Bank of Sturgis by reason of the issuance of the checks. In view of the foregoing and of the insufficiency of the allegations of the complaint to substantiate the contention of the plaintiffs that the funds were deposited for a specific purpose, constituting a special deposit for the benefit of the plaintiffs and other persons furnishing labor and materials, we cannot say that the trial court erred in sustaining the demurrer to the complaint.

The order appealed from is affirmed.

CAMPBELL, P. J., and POLLEY, WARREN, and RUDOLPH, JJ., concur.