Plaintiff seeks to recover $2000.00 which, it says, was deposited with the defendant between the 19th and 21st days of March 1929 upon an agreement whereby the defendant was to use this money for the purpose of paying drafts drawn by the plaintiff; that the defendant so accepted the deposits but failed to pay the drafts and plaintiff was compelled to pay them, and defendant refuses on demand to return the $2000.00.
The defendant denies such agreement and says the plaintiff deposited this amount in the bank in the usual manner for deposit subject to check; that plaintiff had an account in the bank upon which it drew checks and from time to time these checks were paid as presented; that at the close of business on March 23, 1929 the balance due the plaintiff from the defendant on the checking account was $2190.29; thereafter the bank became insolvent and at a later date was re-opened upon the action of a "large majority of the depositors in said bank" after the removal of undesirable assets and an agreement upon the part of said depositors "to accept a reduction of sixty per cent of his or her deposit," and the appointment of the directors as trustees for the purpose of handling the charged off assets; that it was determined the depositors should receive a certain percentage of their claims at specified periods; that the bank examiner and the Guaranty Fund Commission examined the affairs of the bank and determined that such re-opening was for the best interests of the depositors; that the plan was submitted to the District Court of Burleigh County for its approval and that all of the proceedings were had in conformity with the provisions of "Chapter 99 of the Session Laws of 1927 and particularly paragraph 20 thereof;" and that the plaintiff is bound by the agreement. *Page 97 
Plaintiff replied admitting the defendant claimed it was re-opened but denying any knowledge of the plans or arrangements by which it was re-opened. The plaintiff then alleged that the fund deposited was a trust fund given to the defendant bank for the "specific purpose of paying checks and drafts drawn upon it by the plaintiff" and that at all times it had sufficient funds of the bank to repay this trust fund.
The matter was submitted to a jury for a general verdict and for answers to specific questions submitted. The jury found for the plaintiff and that the deposits made by the plaintiff were "made under agreement . . . that the deposits were . . . special trust fund deposits;" that they were special trust fund deposits; and that they were not made in the "usual and ordinary course of banking business for general use and for no special purpose."
The defendant moved for judgment notwithstanding the verdict or for a new trial, and from the order denying such motion it appeals.
In support of this motion the defendant filed six specifications of error — three being based on rulings of the court and the remainder on insufficiency of the evidence.
The paramount issue is the sufficiency of the evidence to justify the verdict.
Just prior to the alleged agreement the defendant and the First National bank transacted business in Sheyenne; the plaintiff was a depositor in the First National bank which closed. Upon its closing the plaintiff transferred its account to a bank in New Rockford and the defendant bank solicited the account. Testimony adduced by the plaintiff is to the effect that when defendant solicited the business he told the president "No, we don't know what effect the closing of the First National Bank will have on your bank, and for that reason we will not open up an account." And the president said "We don't want any of your money. All we want to do is to cash your checks and then each day we will come and get a draft from you;" that in furtherance of this agreement the president and cashier of the defendant bank agreed to cash whatever checks were issued by the plaintiff, keep a separate account of these, tabulate them, present a list of the checks and get the drafts saying "We will even cash those checks for you and then come over and get a draft from you for what amount we have cashed;" *Page 98 
and that in pursuance of this agreement practically every night the bank would send over a tabulation, a draft would be issued sometimes for an additional sum to take care of the outstanding checks or checks that were to be issued; and that this continued until the bank closed.
It is the contention of the plaintiff that the drafts involved were drawn and delivered under this agreement and not applied to that purpose.
In the examination of plaintiff's manager the pass book issued by the defendant bank was introduced and the witness testified that the entries did not represent bank deposits but drafts deposited "to take care of checks they had cashed for us in the bank, all those items;" that they were not deposits as a matter of fact; that the deposits were not made just for the purpose of balancing an account but for the specific purpose claimed; that when he gave the drafts involved he had gone to the bank to get money to pay these particular checks which the defendant at that time was holding. Timely objection was made that the questions called for a conclusion of the witness and that the line of questioning was an attempt to vary the terms of a written contract by parol evidence. There was no error in overruling such objections. The entries in the pass book were made by the defendant and showed the date and amount, but not the nature of the deposit nor the agreement under which it was made. It was proper for the plaintiff to show why it issued drafts and delivered them to the defendant. No reversible error is shown in the rulings.
"Where a person makes a deposit in a bank for the specific purpose of meeting certain checks to be thereafter issued, the bank on accepting the deposit becomes bound by the conditions imposed, and if the money so deposited is misapplied it can be recovered as a trust fund." Morton v. Woolery, 48 N.D. 1132,189 N.W. 232, 24 A.L.R. 1107. Where money is deposited in a bank under an agreement with the bank that such money is to be used for a specific purpose and the bank without the consent of the depositor permits it to be used for some other purpose the bank is liable therefor. Merchants Bank v. Schatz, 59 N.D. 365,230 N.W. 18.
The testimony for the plaintiff shows that in issuing a draft plaintiff added to the amount of the checks already cashed certain sums for the *Page 99 
purpose of paying checks outstanding or to be cashed, no drafts were issued for the purpose of having a general deposit subject to check and all were issued for the specific purpose of being applied to certain checks issued or to be issued. Clearly, if this testimony be correct, the amount of the drafts involved became a trust deposit.
The testimony for plaintiff is not undisputed, but there is evidence to go to the jury in support of this contention, which if believed is sufficient to sustain a verdict for the plaintiff.
Defendant received the proceeds of the drafts involved and did not use them to pay the checks, but closed almost immediately thereafter.
There being evidence to sustain the verdict the court was not in error in refusing to grant judgment notwithstanding the verdict. Such order is made only when the verdict is not justified by the evidence and there is no reasonable ground for believing the defect can be remedied. See Donahue v. Boynton,62 N.D. 182, 190, 242 N.W. 530, 532, and cases cited; Hughes v. Wachter, 61 N.D. 513, 238 N.W. 776. The state of the evidence must be such that the jury can return but one proper verdict. Volk v. Hirning, 56 N.D. 937, 220 N.W. 446.
The defense of re-organization of the bank under the provisions of the statute cited is not available to the defendant.
Under the provisions of § 20 of chapter 99 of the Session Laws of 1927, relating to the re-opening of a closed bank under "articles of agreement" entered into by deposit creditors, it is provided that where such "deposit creditors . . . representing eighty per cent of the amount of deposits therein, exclusive of deposits of public money secured by indemnity bond or otherwise" enter into "articles of agreement" "all other unsecured depositors shall be held to be subject to such agreement and bound by all the terms thereof to the same extent and with like effect as if they had joined in its execution, and in the event of the restoring of such bank to solvency and the re-opening of it for business all depositors shall be bound to abide by the terms thereof." This section also provides for the approval by the district court of such "articles of agreement" after the state examiner and the secretary of the Guaranty Fund Commission certify that they have examined the affairs of the closed bank, and that "it is in condition to open and proceed with business as a solvent bank within the banking and Guaranty Fund statutes." *Page 100 
It is true such articles of agreement were signed by "deposit
creditors of such bank representing eighty per cent of the amount of deposits therein exclusive, etc." and that the state examiner, and the secretary of the Guaranty Fund Commission certified as required, and that the district court made its order permitting such re-organization; but the re-opening did not change the nature of the trust fund. It still remained a trust fund. It it true twenty per cent of the depositors not agreeing (which includes the plaintiff) are held to be bound by the terms to the same extent as if they had joined in the petition; but this means the terms of payment of their unsecured deposits. The "articles of agreement" make no reference to deposits of trust funds; hence we are not compelled to determine whether such statutory provision is applicable to funds of that character. It is not claimed that the "articles of agreement" require the holders of trust funds to take certificates of deposit for their money, according to the terms of the articles. We are not required to determine therefore, whether the recalcitrant twenty per cent could be compelled to abide by the "articles of agreement." The cash represented by these drafts involved belonged to the plaintiff until applied by the defendant in the payment of the checks. It was money over which the depositors had no control.
It is not shown the plaintiff waived any of its rights to demand that the proceeds of its drafts be considered a trust fund, in fact there is testimony that plaintiff's manager, shortly after the closing of the bank demanded of its president that the proceeds be treated as a trust fund. The record shows the plaintiff did not take part in the re-organization and there is nothing to indicate that it consented thereto — rather it opposed it and refused to accept the offers made under re-opening. We are not concerned with what effect such statutory re-organization would have upon a deposit subject to check. The finding of the jury shows this deposit was not of that character. It is the same bank, though reopened under the provisions of the statute. If the drafts were delivered for the purpose claimed they were delivered to this defendant, for this defendant is the same bank.
The jury found specifically in favor of the arrangement as claimed by the plaintiff. It cannot be said as a matter of law that the evidence is insufficient to sustain this verdict, nor is the verdict such that reasonably a contrary view should be preferred. There is nothing to indicate *Page 101 
that additional evidence will be produced in case the matter was submitted to another jury nor is there any inherent probability that a different verdict would be obtained.
It is well settled that "a motion for a new trial on the ground of the insufficiency of the evidence to support the verdict invokes the discretion of the trial court, but the discretion is a legal discretion to be exercised in the interests of justice." The discretion is neither an arbitrary nor a general discretion and an order granting a new trial stands on a firmer foundation in this court than an order denying it. All this is set forth in Kohlman v. Hyland, 56 N.D. 772, 219 N.W. 228. Just what is sound discretion must be determined by the facts in the case under review, as set forth in Volk v. Hirning, 56 N.D. 937,220 N.W. 446, supra, and in Martin v. Parkins, 55 N.D. 339, 345, et seq., 213 N.W. 574. Evidently the trial court did not consider the verdict unreasonable but exercised its discretion in determining the character and weight of the evidence. Viewing the matter in this light the trial court was justified in denying a motion for a new trial. No error being shown the judgment is affirmed.
BIRDZELL, Ch. J., and CHRISTIANSON, NUESSLE, and BURKE, JJ., concur.