CITY STATE BANK IN WELLINGTON v.
NATIONAL BANK OF COMMERCE
OF ALTUS, OKL. et al.

No. 15447.

Court of Civil Appeals of Texas.

Fort Worth.

Oct. 9, 1953.

Rehearing Denied Nov. 6, 1953.

Porter & Lowe, Clarendon, Bullington, Humphrey, Humphrey & Fillmore, and Lee Humphrey, Wichita Falls, for appellant.

Robert B. Harbison, Altus, Okl., Nelson, Montgomery, Robertson & Sellers and Ernest Robertson, Wichita Falls, for appellees.

BOYD, Justice.

This suit was filed by the National Bank of Commerce of Altus, Oklahoma, later joined by Albert Scoggin and Frank Brock, against the Wichita National Bank of Wichita Falls and the City State Bank in Wellington, Texas. The banks will hereinafter be referred to as the Altus Bank, or appellee, the Wichita Bank, and the Wellington Bank, or appellant.

The Altus Bank alleged that the Wichita and Wellington Banks were indebted to it in the sum of $15,574.23, representing the proceeds of a deposit in the Wellington Bank by J. T. Boyd for the specific and special purpose of paying two checks totaling that amount which had theretofore been drawn by Boyd on the Wellington Bank and given to Scoggin and Brock in payment for 93 head of cattle.

These checks were deposited by Scoggin and Brock to Scoggin's credit in the Altus Bank, which bank has not been reimbursed therefor, and were forwarded by it through the Wichita Bank to the Wellington Bank for payment. The checks were received through the mail by the Wellington Bank on the morning of February 28, 1952, and on the same day remittance was made through the mail to the Wichita Bank; but later, on the same day, the Wellington Bank wired the Wichita Bank that the checks would not be paid because they were

"drawn against uncollected deposits." On the next day the Wellington Bank protested the checks and returned them through the mail to the Wichita Bank "for collection." Before the trial, the Wichita Bank paid the proceeds of the Wellington Bank's remittance into the registry of the court.

On February 26, before the checks made to Scoggin and Brock reached the Wellington Bank, Boyd sold, through the Amarillo Livestock Auction, 92 head of the cattle he had bought from Scoggin and Brock, and had deposited to his own account in the Wellington Bank two checks he received in payment therefor, totaling $15,842.02, drawn on the First National Bank of Amarillo, hereinafter called the Amarillo checks. The Wellington Bank received the proceeds from the Amarillo checks on February 29, but had theretofore applied all of Boyd's account to his overdraft.

The case was submitted to the jury on special issues and the jury found that Boyd deposited the Amarillo checks for the specific purpose of paying his outstanding checks to Scoggin and Brock; that at the time he made the deposit Boyd instructed the officers of the Wellington Bank that the deposit was made for that purpose; that the Wellington Bank knew that the deposit was made for that purpose; that the Wellington Bank, by the exercise of reasonable diligence, should have known that such deposit was made for that purpose; and that more than twenty-four hours elapsed between the time the Scoggin and Brock checks were received by the Wellington Bank and the time the Wellington Bank deposited said checks in the mail for return to the Wichita Bank. Judgment was rendered for the Altus Bank against the Wellington Bank for the amount of the checks Boyd had given to Scoggin and Brock, and from the judgment the Wellington Bank appeals.

Appellant's first point is that the Altus Bank is not entitled to recover under the pleadings and the evidence, the contention being that the checks given to Scoggin and Brock were still owned by them and that the Altus Bank was merely the agent of the depositor for the purpose of forwarding the checks for collection, and that if anyone gained any rights on account of the conduct of the Wellington Bank in handling the checks it could only be the owner of the checks or the fund.

Appellant cites Tillman County Bank v. Behringer, 113 Tex. 415, 257 S.W. 206, 36 A.L.R. 1302; Garver v. Howard, 113 Tex. 371, 257 S.W. 209; and Behringer v. City Nat. Bank, Tex.Civ.App., 296 S.W. 674, as authority for the proposition that the Altus Bank is not entitled to recover from appellant the amount of the Scoggin and Brock checks. Since in none of these cases was our precise question before the court, we do not think they sustain appellant's contention. The first cited case was a suit by the depositor of a cashier's check on a bank in a distant town, against the bank in which he deposited it "for collection." That bank sent the check to its correspondent bank, which bank in turn sent it to the drawer bank. Several days after the check reached the drawer bank, that bank failed, the check not having been paid, and the amount of the check was charged back to the plaintiff's account by the defendant bank. The plaintiff alleged and the court found that defendant's correspondent bank was negligent in handling the collection. The Supreme Court held that the correspondent bank was the agent of the depositor and not of the forwarding bank, and that its negligence did not render the forwarding bank liable. The second cited case was similar to and was disposed of on the authority of the first one. The last cited case was a suit by the plaintiff in the first case against the correspondent bank. It was held that this suit was barred by limitation.

The weight of authority seems to be that when commercial paper is endorsed without restriction by a bank depositor and is at once passed to his credit by the bank to which he delivers it, he becomes the creditor of the bank, and the bank becomes the owner of the paper, and in making the collection is not the agent of the depositor, notwithstanding a custom or agreement to charge the paper back to the depositor in the event of dishonor. Burton v. United

States, 196 U.S. 283, 25 S.Ct. 243, 49 L.Ed. 482; City of Douglas v. Federal Reserve Bank of Dallas, 271 U.S. 489, 46 S.C. 554, 70 L.Ed. 1051, 3 R.C.L., p. 632, sec. 261; Brusegard v. Ueland, 72 Minn. 283, 75 N.W. 228; National Bank of Commerce v. Bossemeyer, 101 Neb. 96, 162 N.W. 503, L.R.A.1917E, 374; Walker & Brock v. D. W. Ranlett Co., 89 Vt. 71, 93 A. 1054; Aebi v. Bank of Evansville, 124 Wis. 73, 102 N.W. 329, 68 L.R.A. 964, 109 Am.St.Rep. 925.

▮ But it is not necessary that the Altus Bank should be the owner of the Scoggin annd Brock checks in order to enable it to sue. It could do so under the doctrine that the holder of a negotiable instrument may sue for its collection. Art. 5935, § 51, Vernon's Ann.Civ.St.; Funkhouser v. Chemical Bank & Trust Co., Tex. Civ.App., 53 S.W.2d 146, writ refused; Neyland v. Lanier, Tex.Civ.App., 273 S.W. 1022; Felthouse Lumber Co. v. Tijerina, Tex.Civ.App., 164 S.W.2d 732. One who appears to be the legal holder may sue. Thompson v. Cartwright, 1 Tex. 87; McMillan v. Croft, 2 Tex. 397; Hays v. Cage, 2 Tex. 501; Andrews v. Hoxie, 5 Tex. 171. And it is immaterial whether any consideration moved from the Altus Bank to the original payees of the Scoggin and. Brock checks. Eason v. Locherer, 42 Tex. 173; Hughes v. Dopson, Tex.Civ.App., 135 S.W. 2d 148; 10 C.J.S., Bills and Notes, § 515, p. 1140.

▮ Appellant contends that it was error to render judgment for the Altus Bank because no issue was submitted and no jury finding made to the effect that appellant's officers ever agreed, or that there was any understanding between them and Boyd, that the deposit of the Amarillo checks was to be regarded as a special deposit for the purpose of paying Boyd's checks to Scoggin and Brock. Appellant requested the submission of such issues. It seems that such findings would be immaterial since the jury found that the officers of the bank accepted the deposit after being instructed by Boyd that the deposit was made for the purpose of paying the Scoggin and Brock checks.

In First Nat. Bank of Schulenburg v. Winkler, Tex.Civ.App., 146 S.W.2d 201, the court held that where a bank has on deposit a fund, all or a part of which is known by it to be impressed with a trust character, it cannot apply any of that fund to the debts of the depositor. In First Nat. Bank of Amarillo v. Slaton Independent School Dist., Tex.Civ.App., 58 S.W.2d 870, it is said that money or property being delivered by one person to another for a specific purpose, the person accepting such money or property becomes a trustee and such transaction becomes a trust. And in Cotulla. State Bank v. Herron, Tex.Civ.App., 191 S.W. 154, the court held that when a customer makes a special deposit in a bank for the purpose of discharging certain of his liabilities, the bank cannot use the deposit for any other purpose. And to the same effect are the holdings in Sharon Grain Co. v. Farmers' Nat. Bank of Follett, Tex.Civ. App., 277 S.W. 449; Richardson v. Isham, Tex.Civ.App., 265 S.W. 1101; and Steere v. Stockyards Nat. Bank, 113 Tex. 387, 256. S.W. 586. In 9 C.J.S., § 275, p. 572, under Banks and Banking, it is said: " * * * In. using deposits made for the purpose of having them applied to a particular purpose, if the bank, acting as the agent of the depositor, should fail to apply it at all, or should misapply it, it can be recovered as a trust deposit; * * *." In Morton v. Woolery, 48 N.D. 1132, 189 N.W. 232, 233, 24 A.L.R. 1107, the court said: "Where money is deposited for a special purpose, as for instance in this case where it was deposited for the stated purpose of meeting certain checks to be thereafter drawn against such deposit, the deposit does not become a general one, but the bank, upon accepting the deposit, becomes bound by the conditions imposed, and, if it fails to apply the money at all, or misapplies it, it can be recovered as a trust deposit. * * *" See also annotation, 24 A.L.R., p. 1111.

▮ The evidence supports the jury's finding that when Boyd deposited the Amarillo checks in appellant bank he instructed its officers that the deposit was made for the purpose of paying his checks to Scoggin and Brock. We are of the

opinion that the court did not err in refusing to submit appellant's requested issues asking if the bank agreed to the special deposit. The rule seems to be that the depositor may direct how the fund shall be appropriated; and since the appellant bank did not refuse the deposit made under such circumstances, its consent is implied.

█ Appellant urges that it was error to admit the testimony of appellant's officers, Nelson and Brummett, and the witness Patterson, about "check kiting" by J. T. Boyd and his brother through appellant bank. It was shown by these witnesses that for several months immediately prior to the time of the transactions involved in this case J. T. Boyd and his brother were switching checks between the Wellington Bank and a bank in Hollis, Oklahoma. If this testimony was not admissible, we perceive no reversible error in as much as appellant was the first to introduce evidence on the point. Appellant asked the witness Nelson, "* * how many of these so-called kites, hot checks had Boyd deposited or caused to be deposited in your bank" from February 20 to February 28; and the answer was that five had been deposited, aggregating the sum of $103,000.

█ Error is assigned to the action of the court in striking appellant's plea of privilege to appellee's amended petition. A plea of privilege had theretofore been filed by appellant, and was controverted, heard and overruled, and on appeal the judgment was affirmed. City State Bank in Wellington v. Wichita Nat. Bank of Wichita Falls, Tex.Civ.App., 253 S.W.2d 308. Appellee filed a plea of res judicata and moved to strike the plea of privilege, which plea and motion were sustained. Appellant contends that Art. 7425b–24, subsection B, Vernon's Ann.Civ.St., prevails over the general venue statute, Art. 1995, and that since appellee in its amended petition alleged, for the first time, that the proceeds of the Amarillo checks, upon their deposit in the Wellington Bank, became trust funds belonging to Scoggin and Brock, a new cause of action was therefore alleged and that the plea of res judicata should not have been sustained.

Except for the legal conclusion that the proceeds were trust funds, we see little difference between the allegations in the original and amended petitions, and none in respect to the facts fixing the legal rights of the parties. The original petition alleged that the deposit was made for the specific and special purpose of paying the Scoggin and Brock checks, and that appellant bank knew that, and knew that the deposit represented the proceeds of the sale of the Scoggin and Brock cattle, and accepted it with full knowledge of these facts. The amended petition does include an allegation that without regard to the nature of the deposit, appellant's officers had full knowledge that Boyd bought cattle from time to time, gave his checks for the purchase price, and sold the cattle and deposited the proceeds from the sales to his account in appellant bank to pay the checks given by him for the purchase; that this course of conduct had continued for more than two years and that if appellant did not have actual knowledge of such course of dealings then, by the exercise of reasonable prudence, it should have had such knowledge.

We believe the judgment sustaining the plea of res judicata was proper. In 50 C.J.S., Judgments, § 650, p. 92, it is said: "The estoppel of a judgment extends only to the facts and conditions as they were at the time the judgment was rendered, and to the legal rights and relations of the parties as fixed by the facts so determined; * * * change of facts will not affect the estoppel if no new element is introduced, and the legal rights and relations of the parties remain as before; * * *."

█ We do not think that the amended petition stated a new cause of action or that it, for the first time, alleged the existence of a trust, nor can we agree that Art. 7425b–24, subsection B, has application to the facts of this case. That article is a part of Title 125A, denominated "Trusts and Trustees", and it is provided that "In cases where there be a single trustee, the venue of such

actions shall be in the county of the residence of such trustee; * * *." But the "actions" referred to are enumerated in subsection A of said article as those to "* * * construe the provisions of any trust instrument; to determine the law applicable thereto; the powers, responsibilities, duties, and liability of trustee; the existence or non-existence of facts affecting the administration of the trust estate; to require accounting by trustee; and to surcharge trustee." Art. 7425b–2 of the same title provides that for the purpose of this act "trust" means "* * * an express trust only, and does not include (1) resulting or constructive trusts, * * *." If the creation of an express trust was alleged by appellee, we believe it was alleged in substance in the original petition, and that the additional allegations in the amended petition in regard to the creation of a trust amount only to an allegation of the existence of a resulting or constructive trust. Moreover, we do not believe that this suit is such an "action" as must be brought in the county of the "trustee's" residence.

 We have also reached the conclusion that appellant made an irrevocable payment of the checks. The proper construction of Art. 342–704, Vernon's Ann. Civ.St., seems to be that in order to escape liability for the amount of an item presented to a drawee bank by mail, and the drawee bank determines that it is not obligated at the time of presentment to pay it, it must, during the day the item is presented, or within twenty-four hours after presentment, deposit the item in the mail, properly stamped and addressed to the bank or the person presenting the same. The checks were received by appellant between eight and ten o'clock A.M., February 28, and they were deposited in the mail late in the afternoon of the 29th. Obviously, they were not deposited in the mail on the day they were presented, nor within twenty-four hours after presentment.

■ . Appellant insists that since on the 28th it wired the Wichita Bank that it was returning the checks protested, it is immaterial that they were not deposited in the

mail within twenty-four hours. That would be true if the checks had been presented over the counter for payment in cash or for deposit in the drawee bank. Art. 342–704, subsection 1, Vernon's Ann.Civ.St. The notice provided for in subsection 1 has no application to the instant case, since it is controlled by subsection 3.

We have considered all of appellant's assignments, and believing that reversible error is not shown, all are overruled, and the judgment is affirmed.